754 F.2d 490
 BELL, Warner, Appellant,
v.
UNITED STATES of America, Department of Labor, the Travelers
Insurance Company, Wistar Institute, Callahan,
John J. Jr., Appellees.
BELL, Warner, Cross-Appellee,
v.
UNITED STATES of America, Department of Labor, the Travelers
Insurance Company, Wistar Institute, Callahan, John J. Jr.
Appeal of The TRAVELERS INSURANCE COMPANY, Cross-Appellant.
 Nos. 83-1223, 83-1269.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 11, 1984.
Decided Jan. 30, 1985.
Rehearing and Rehearing En Banc Denied March 1, 1985.
 
 Joel D. Caney, Larry D. Jackson (argued), Needleman, Needleman, Caney, Stein & Kratzer, LTD., Philadelphia, Pa., for appellant, J. Paul McGrath, Asst. Atty. Gen., Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Edward S.G. Dennis, Jr., U.S. Atty., Philadelphia, Pa., William Kanter, Freddi Lipstein, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for appellee United States of America Department of Labor.
 Jeffrey A. Less (argued) A. Richard Feldman, Bazelon, Less & Price, Philadelphia, Pa., for appellee and cross-appellant The Travelers Ins. Co.
 Francis T. McDevitt (argued), Naulty, Scaricamazza & McDevitt, Philadelphia, Pa., for appellees Wistar Institute and John J. Callahan, Jr.
 Before GIBBONS and GARTH, Circuit Judges, and TEITELBAUM, District Judge.*
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 In this appeal we are asked to determine whether the district court erred in its dismissal of certain defendants for lack of jurisdiction, and in its construction of various statutory provisions of the Pennsylvania No-Fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, No. 176, Secs. 101 et seq., Pa.Stat.Ann. tit. 40, Secs. 1009.101 et seq. (Purdon Supp.1984) ("No-Fault Act"). We affirm.I.
 
 
 2
 The facts in this case are not in dispute and have been agreed upon by stipulation. On July 22, 1981, appellant, Warner Bell ("Bell"), a Pennsylvania resident, was injured in a two-vehicle accident. At the time of the accident, he was employed by the Department of Defense as a civilian file clerk and was acting within the scope of his employment. Bell was a passenger in a federally-owned truck which was hit in the rear by a vehicle owned by First Pennsylvania Auto Leasing and driven by John Callahan ("Callahan"). Callahan was employed by Wistar Institute ("Wistar") and, at the time of the accident, was also acting within the scope of his employment.
 
 
 3
 Bell was severely injured as a result of the accident and was unable to return to work for many months. As of January 26, 1983, Bell's medical expenses totaled $32,509.24, and his lost earnings amounted to $13,648.80 and were accruing at the rate of $188.00 per week.
 
 
 4
 The government truck in which Bell was a passenger was not registered in Pennsylvania nor was it insured under Pennsylvania's No-Fault Act. At the time of the accident, Bell had no statutorily identifiable source of coverage under Pennsylvania's No-Fault Act, as he did not own a vehicle, did not reside with the owner of a vehicle, and was not named insured in any policy of basic loss insurance under the No-Fault Act. Since the accident, Bell has been receiving federal workmen's compensation payments for his medical expenses and lost earnings under the Federal Employee's Compensation Act ("FECA"), 5 U.S.C. Secs. 8101, et seq. (1982).
 
 
 5
 In April 1982, Bell filed an application with the Pennsylvania Assigned Claims Plan[1] ("the Plan"), the entity created by the No-Fault Act to provide coverage for vehicle accident victims who have no statutorily identifiable source of coverage. The Plan initially rejected Bell's request, stating that he was not entitled to benefits under the No-Fault Act.
 
 
 6
 Bell responded by filing suit in the Court of Common Pleas to compel the Plan to designate a servicing carrier to Bell's claim for no-fault benefits. In May 1982, the court granted Bell's motion and ordered the Plan to assign Bell's claim to a servicing carrier. As a result of the court's order, the Plan assigned Bell's claim to Travelers Insurance Company ("Travelers"). On July 6, 1982 Travelers denied Bell's claim for benefits and directed Bell to seek benefits instead through the United States Government. Travelers further stated that since Bell is eligible for workmen's compensation benefits, there would be no money due Bell from Travelers once Travelers set-off the amount Bell received from workmen's compensation. On July 22, 1982, Travelers sent Bell another letter denying liability on the alternative ground that the vehicle in which Bell was a passenger at the time of the accident was not a "motor vehicle" within the meaning of the No-Fault Act and therefore Travelers was not required to make payment under the Plan.
 
 
 7
 Shortly after Travelers' last letter, Bell filed suit in the Eastern District of Pennsylvania seeking declaratory and injunctive relief from the United States Department of Labor and Travelers, and monetary damages from Wistar Institute and Callahan. In an order filed December 30, 1982, the district court dismissed Wistar and Callahan for lack of subject matter jurisdiction. The district court judge also dismissed the Department of Labor, but held that the Department was entitled to satisfaction of a statutory lien on any recovery in tort made by Bell from Wistar and Callahan. The judge did not dismiss the action between Bell and Travelers because there was diversity of citizenship.
 
 
 8
 Bell and Travelers then submitted cross motions for summary judgment. On March 25, 1983, the district court held that Bell was entitled to recover No-Fault benefits from Travelers under the Plan, but that Travelers was authorized to deduct the entire amount of Bell's FECA benefits from Bell's No-Fault recovery.[2] Bell appeals both the December 30, 1982 and March 25, 1983 orders of the district court. Travelers cross-appeals.
 
 II.
 
 9
 As a preliminary matter, we affirm the district court's order of December 30, 1982 dismissing Wistar, Callahan, and the Department of Labor. We are presented with two issues from Bell's appeal of that order. The first is whether the Department of Labor is entitled to exercise a statutory lien over non-economic tort recovery. The second is whether there existed subject matter jurisdiction with regard to appellees Wistar and Callahan.
 
 A.
 
 10
 The No-Fault Act's operation generally limits any recovery sought in tort against the driver of the other automobile to non-economic losses such as pain and suffering. Pa.Stat.Ann. tit. 40, Sec. 1009.301(a)(4) (Purdon Supp.1984). Bell originally argued that the United States, pursuant to section 8132[3] of FECA, could not exercise a statutory lien against tortfeasors Callahan and Wistar because FECA did not authorize the government to offset its payments with any form of non-economic recovery.
 
 
 11
 5 U.S.C. Sec. 8132 essentially provides that when a beneficiary receives compensation from the United States under this statute and also receives payments from a third person for the same injuries or damages, the beneficiary, after deducting from the third party recovery the costs of suit and a reasonable attorney's fee, is required to refund to the government the amount of compensation which the government had paid to him, to the extent of his third party recovery. The district judge rejected Bell's argument, relying entirely on Judge Bechtle's district court opinion in Lorenzetti v. United States, 550 F.Supp. 997 (E.D.Pa.1982), rev'd, 710 F.2d 982 (3d Cir.1983), rev'd, --- U.S. ----, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984). In Lorenzetti, Judge Bechtle held that the Government was entitled under FECA to reimbursement from an employee's non-economic tort recovery of the benefits which the government had paid under workmen's compensation. Although this court reversed the district court's Lorenzetti decision, see Lorenzetti v. United States, 710 F.2d 982 (3d Cir.1983), the Supreme Court thereafter reversed our decision, and thereby upheld the district court's conclusion. United States v. Lorenzetti, --- U.S. ----, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984).
 
 
 12
 In light of the Supreme Court's pronouncement, the district court in the present case was correct in holding that the government is entitled to a general right of reimbursement that attaches to Bell's recovery of non-economic losses.
 
 B.
 
 13
 The district court was also correct in dismissing appellees Wistar and Callahan for lack of jurisdiction. Since both Bell and Callahan are residents of Pennsylvania and Wistar is a non-profit corporation organized under the laws of Pennsylvania, app. at 2-3, there exists no diversity of citizenship in the event that Callahan and Wistar remain as parties.
 
 
 14
 Bell seeks to retain his state court claims against Wistar and Callahan by asserting that the No-Fault Act violates the United States Constitution. Bell argues that the No-Fault Act, by abolishing tort liability for economic losses, unreasonably discriminates against employees of the federal government in violation of the equal protection clause. This federal claim is without merit. While federal employees may receive reduced no-fault payments as a result of the FECA lien on third party tort recoveries, such decreased benefits do not represent a constitutional deprivation. The fourteenth amendment guarantees equal laws, not equal results. Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979).
 
 
 15
 It is important in this regard to note that the No-Fault Act does not, on its face, discriminate against federal employees. Although a statute's facial neutrality does not automatically immunize the statute from an attack on equal protection grounds, the burden that the plaintiff must satisfy is made more difficult. When, as in this case, the attack is based on a statute's discriminatory impact, the burden is on the plaintiff, here Bell, to demonstrate that the legislators had a discriminatory intent. Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976).
 
 
 16
 In the instant case, to state a federal claim, Bell had to allege that the No-Fault Act was designed to purposefully discriminate against federal employees. This he has failed to do. In neither his pleadings, submissions, or arguments has Bell alleged or established the requisite discriminatory intent. Given the fact that Bell has failed to state a claim under the equal protection clause, and noting in passing that Bell will not be deprived of a forum since he has already initiated a suit for personal injuries against Wistar and Callahan in Pennsylvania state court, see, Warner Bell v. The Travelers Insurance Company, et al., Dec. Term, 1982, No. 4959, we hold that the district court did not err in dismissing Bell's claims against defendants Wistar and Callahan.
 
 III.
 
 17
 The cross-appeals taken from the district court's March 25, 1983 summary judgment order present this court with issues of first impression and require us to interpret various sections of Pennsylvania's No-Fault Act.[4] At the outset, we note that there is no legislative history to shed light on the purpose or meaning of any of the No-Fault Act's provisions. As a result, our analysis must primarily rely upon the statutory language of the Act itself, as well as upon general policy statements contained in the relevant case law.
 
 A.
 
 18
 In the instant case, the district court held that Bell was entitled to receive both no-fault and workmen's compensation payments. See Bell v. United States Dep't. of Labor, 560 F.Supp. 515, 519-20 (E.D.Pa.1983). Travelers, however, presents the novel argument that Bell is not entitled to benefits under Pennsylvania's No-Fault Act because Bell's workmen's compensation recovery under FECA is exclusive. Travelers contends that to allow Bell to recover from both the FECA and the Assigned Claims Plan would be contrary to the provisions and purposes of the No-Fault Act. Bell, on the other hand, claims that he is entitled to the difference between the FECA benefits that he has been receiving and the no-fault benefits. The district court, as we have noted, agreed with Bell.
 
 
 19
 As an initial matter, it should be emphasized that our attention has not been called to any provision of the No-Fault Act which would excuse a payment of no-fault benefits to a claimant who was receiving workmen's compensation. Indeed, the Pennsylvania Superior Court has held that an employee who received Pennsylvania workmen's compensation benefits was not precluded from also recovering benefits under the Assigned Claims Plan of the No-Fault Act. Borrell v. Continental Casualty Co., 310 Pa.Super. 554, 456 A.2d 1074 (1983).
 
 
 20
 In its attempt to limit Bell to only his FECA benefits, Travelers relies on policy arguments which do not persuade us, and case law which we find to be inapposite. Travelers' basic contention is that an insurance company should not be required to pay benefits pursuant to the Assigned Claims Plan when, under section 501[5] of the No-Fault Act, Pa.Stat.Ann. tit. 40, Sec. 1009.501 (Purdon Supp.1984), the owner of the uninsured vehicle (in this case the government) is under no obligation to reimburse the insurance company.
 
 
 21
 Section 501 of the No-Fault Act allows an insurance company that pays benefits to a victim injured while in an uninsured motor vehicle to recover from the vehicle's owner. However, since the Department of Defense is the uninsured owner of the vehicle in which Bell was injured. Travelers cannot successfully maintain an action under section 501 due to the federal government's shield of sovereign immunity. Travelers contends that its inability to recover any benefits which Travelers must pay, releases Travelers from its obligation to pay benefits under the Assigned Claims Plan. In effect, Travelers argues that section 501 may be invoked by an Assigned Claims carrier not only to recover its no-fault payments from the owner of an uninsured vehicle, but that section 501 also protects the carrier from making no-fault payments when the uninsured owner cannot be sued.
 
 
 22
 On the basis of the statutory arguments made, we conclude that despite Travelers' inability to recover from the government under section 501, Travelers still remains responsible for its no-fault payments. Nowhere does section 501, or any other provision of the No-Fault Act, suggest that an insurance company is released from its obligation to pay benefits if it cannot succeed in obtaining reimbursement under section 501. Section 501 was designed to provide insurance companies with a potential source of reimbursement. It was not designed to allow insurance companies to escape payment obligations. This result is consistent with the No-Fault Act's primary purpose which is to provide basic loss benefits to individuals injured in automobile accidents. Pa.Stat.Ann. tit. 40, Sec. 1009.102(b) (Purdon Supp.1984). See generally Harleysville Mutual Insurance Company v. Schuck, 302 Pa.Super. 534, 449 A.2d 45 (1982).
 
 
 23
 Unable to find direct support for its exclusivity argument, Travelers draws an analogy between the present situation and the situations presented in cases where residents of other states have been injured in Pennsylvania. Travelers calls our attention to Toter v. Knight, 278 Pa.Super. 547, 420 A.2d 676 (1980), which involved an automobile collision between vehicles operated by Toter, a New Jersey resident, and Knight, a resident of Pennsylvania. In Toter, the Superior Court of Pennsylvania resolved a claimed statutory conflict in Pennsylvania's No-Fault Act. The court permitted Toter to pursue a tort action in Pennsylvania despite the Pennsylvania No-Fault provision that abolished tort liability. Pa.Stat.Ann. tit. 40, Sec. 1009.301(a)(4). (Purdon Supp.1984). In its discussion of the purported "conflict" issue presented, the court referred to still another provision of the No-Fault Act, section 110(c)(1).[6] That statute provides, among other things, that a nonresident domiciled in a state that has its own no-fault plan is denied benefits available under Pennsylvania's No-Fault Act and is remitted to the benefits available to the plan of his home state. Pa.Stat.Ann. tit. 40, Sec. 1009.110(c)(1) (Purdon Supp.1984). Travelers seeks to persuade us that just as a resident of another no-fault state is required to pursue no-fault benefits in his home state, so should Bell in this case be required to pursue only FECA benefits from the federal government.
 
 
 24
 We find that Travelers' reliance on Toter is entirely inappropriate. First, Toter involves two states--each of which has its own no-fault statute--and the issue presented concerned the availability of a tort action brought in the face of a Pennsylvania No-Fault statute that purportedly barred such an action. This is not our situation.
 
 
 25
 Second, the analysis in Toter relied upon still another provision of the Pennsylvania Act which remitted a nonresident to the no-fault benefits that his home state provided.
 
 
 26
 In this case, we are not presented with another state's no-fault plan, but rather with the federal government's workmen's compensation scheme. Under FECA, the benefits paid may differ in character from the benefits which compensate a victim who claims no-fault payments. Finally, in Toter, a New Jersey claimant was denied Pennsylvania no-fault benefits, although he was permitted to pursue other tort claims. In the instant case, the claimant, Bell, is a resident of Pennsylvania, and as such, is entitled to protection under Pennsylvania's No-Fault Act. The court in Toter recognized the importance of Pennsylvania residency with regard to coverage under the No-Fault Act when it considered the policy underlying the No-Fault Act. It answered the question which it asked, as follows:
 
 
 27
 Is the policy of the [No-Fault] Act to provide for all persons injured in Pennsylvania, or to provide for all Pennsylvanians injured in motor vehicle accidents? As already noted, the basic intent of the Act is to provide basic loss benefits to Pennsylvanians injured in Pennsylvania ....
 
 
 28
 278 Pa.Super. at 555-56, 420 A.2d at 681 (quoting D. Shrager, The Pennsylvania No-Fault Motor Vehicle Insurance Act, Sec. 1:16.3 at 131-32 (1979)) (emphasis added). Thus, we hold that Bell is entitled to no-fault benefits despite the fact that Travelers is denied recovery from the government under section 501 due to the government's sovereign immunity.
 
 B.
 
 29
 Travelers argues that even if the district court correctly held that Bell's recovery under FECA is nonexclusive, the district court erred in determining that, under Section 204[7] of the No-Fault Act, Travelers was the appropriate carrier to pay Bell's claim.
 
 
 30
 Section 204 of the No-Fault Act sets out the source of recovery for a victim entitled to benefits under the Act. Travelers maintains that under that section, the proper source of recovery is not, as the district court held, the Assigned Claims Plan (see section 204(a)(5)), which would require Travelers to respond to Bell's claim. Rather Travelers contends the proper source of recovery is the insurer of the leased car that Callahan was driving (see section 204(a)(4)).
 
 
 31
 By its terms, Section 204(a)(4) applies to an individual who is (1) not an insured, (2) not the driver of a "motor vehicle," and (3) not the occupant of a "motor vehicle." Bell was not an insured and was not the driver of the government-owned truck. Bell, however, was an occupant (a passenger) in the government-owned truck, which Bell claims is a motor vehicle within the meaning of section 204(a)(4). Thus, section 204(a)(4) is inapplicable. The provisions of section 204(a)(4) could come into play in the circumstances of this case only if the government-owned truck was held not to be a "motor vehicle" within the meaning of the No-Fault Act.
 
 
 32
 Travelers argues that because the government vehicle was not a "motor vehicle," section 204(a)(4) is the controlling provision of the Act, and as such, the insurer of Callahan's car, rather than Travelers under section 204(a)(5), should respond to Bell's claims. As we have noted, the district court rejected this argument and held that, because Bell did not fall within the first four sections of 204(a), Bell was necessarily covered under section 204(a)(5), which refers to "any other individual" and which provides that the Assigned Claims Plan is the proper source of recovery. We agree.
 
 
 33
 A "motor vehicle" is defined by section 103 of the No-Fault Act as "a vehicle of a kind required to be registered under the act of April 29, 1959 (P.L. 58, No. 32), known as The Vehicle Code." Pa.Stat.Ann. tit. 40, Sec. 1009.103 (Purdon Supp.1984) (emphasis added).
 
 
 34
 Travelers argues that this definition requires a determination of which vehicles must or must not be registered in Pennsylvania. Accordingly, Travelers maintains that if an automobile is not required to be registered in Pennsylvania, it is not a "motor vehicle" for purposes of the No-Fault Act. If we were to accept Travelers' argument, then the federally owned truck in which Bell was a passenger would not be a "motor vehicle" under section 103, because, by operation of federal law, the truck was not required to be registered in Pennsylvania. As Travelers points out, federal regulation specifically excludes government owned vehicles from mandatory state registration.[8]
 
 
 35
 We believe, however, that Travelers' definition of "motor vehicle" is far too narrow. The plain language of the statute provides that a "motor vehicle" is a vehicle of a kind required to be registered. In arguing for its interpretation, Travelers apparently ignored the import of section 103's qualifying language "of a kind." It is our duty, under established principles of statutory construction, to give effect, if possible, to every clause and word of a statute. United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 519-20, 99 L.Ed. 615 (1955); Commonwealth v. Sitkin's Junk Co., Inc., 412 Pa. 132, 138, 194 A.2d 199, 202 (1963). If the legislature had intended to limit the meaning of "motor vehicle" to only those vehicles required to be registered in Pennsylvania, it could have done so explicitly. Instead, by including the words "of a kind," the legislature expanded the definition of motor vehicle to encompass not only vehicles required to be registered under Pennsylvania's Vehicle Code, but also those vehicles generically similar to vehicles required to be registered. Since the truck in which Bell was a passenger is of the generic variety of vehicle that must be registered under the Pennsylvania Vehicle Code,[9] it falls under the definition of "motor vehicle" contained in section 103 of the No-Fault Act.
 
 
 36
 Our construction of the No-Fault Act is also supported by the language of the Act's title.[10] The title of the No-Fault Act, which provides an overview of the Act's many provisions, states that No-Fault insurance is mandatory "for all motor vehicles required to be registered in Pennsylvania...." Pa.Stat.Ann. tit. 40, Sec. 1009.101 (Purdon Supp.1984). If, as Travelers argues, the legislature had intended the definition of "motor vehicle" under section 103 to be limited to only those vehicles required to be registered under the Act, the legislature presumably would have used the same unequivocal language in section 103 that it employed in the Act's title. Instead, the legislature intentionally broadened the definition of "motor vehicle" in section 103 by inserting the words "of a kind."
 
 IV.
 
 37
 The district court held that Travelers is not obligated to compensate Bell for amounts recovered by the Government pursuant to its Lorenzetti lien. Bell appeals that holding, contending that Travelers, by off-setting Bell's FECA benefits against Travelers' no-fault payments, is thereby impermissibly reimbursed for Bell's non-economic loss. We reject Bell's argument and uphold the district court's conclusion that Travelers is not required to make payments to Bell for the Lorenzetti amounts that the government has recovered.
 
 
 38
 Under the Pennsylvania No-Fault Act, a tort action against the driver of the other automobile is generally limited to recovery for non-economic losses. As we have earlier discussed, in United States v. Lorenzetti, supra, the Supreme Court held that under section 8132 of FECA, 5 U.S.C. Sec. 8132 (1982), the government is entitled to a general right of reimbursement that attaches to the employee's third party recovery of non-economic losses. This lien permits the federal government to deduct from its FECA payments any non-economic tort recovery to which the employee is entitled. The issue presented to the district court by Bell was whether Travelers is entitled under Pennsylvania's No-Fault statute to deduct from any payment due Bell, the entire amount of the government's FECA benefit obligations (including those benefits which represent Bell's potential recovery against Callahan and Wistar) and thus, indirectly deduct from payments due to Bell, Bell's potential tort recovery against third parties.
 
 
 39
 There are two No-Fault Act provisions which bear upon this issue. Travelers relies on section 108(a)(3),[11] Pa.Stat.Ann. tit. 40, Sec. 1009.108(a)(3) (Purdon Supp.1984), which provides that in calculating net loss under the Assigned Claims Plan, an insurance company may deduct any benefits received by the victim. Bell, on the other hand, places great importance on section 111(a)(1)(A),[12] Pa.Stat.Ann. tit. 40, Sec. 1009.111(a)(1)(A) (Purdon Supp.1984), which outlines the reimbursement and subrogation rights of insurance companies under the Act. Section 111(a)(1)(A) forbids an insurance company from exercising, either directly or indirectly, a right of reimbursement to the proceeds of a victim's cause of action for non-economic damages.
 
 
 40
 Bell argues that under section 111(a)(1)(A), Travelers must reimburse Bell for any money the government recovers as a result of its Lorenzetti lien on Bell's non-economic tort recovery. Bell's reasoning is as follows. Since the government has a lien against Bell for any non-economic tort recovery, the FECA benefits that Bell ultimately receives from the government will, in effect, be comprised of compensation for both economic and non-economic injury. Thus, when Travelers deducts Bell's FECa benefits from its no-fault payments pursuant to section 108(a)(3), Travelers is indirectly offsetting its no-fault payments with Bell's non-economic tort claim recovery in violation of section 111(a)(1)(A).
 
 
 41
 While Bell's argument is though provoking, it is not in accord with the plain language of the No-Fault Act. By deducting Bell's FECA benefits, Travelers is not exercising a form of indirect reimbursement for non-economic damages because Travelers' no-fault payments to Bell are not dependent upon Bell's non-economic recovery. Since Travelers is obligated to pay the same amount of benefits to Bell regardless of any non-economic recovery to which Bell might be entitled, Travelers cannot be said to be reimbursed, directly or otherwise, by Bell's non-economic recovery.
 
 
 42
 A simplified numerical example may be helpful in explaining the relationship between no-fault payments, FECA benefits and non-economic tort recovery. Assume that Bell is entitled to $100 in FECA benefits and $200 in no-fault benefits. Bell's total recovery will amount to $200: $100 from FECA benefits and $100 from the no-fault insurer (the insurer will deduct the $100 in FECa benefits from its $200 obligation pursuant to section 108(a)(3) of the No-Fault Act).
 
 
 43
 Assume now, however, that Bell recovers an additional $100 in a third party tort action for non-economic damages. Bell, of course, is not advantaged by his non-economic tort recovery since the Government will exercise its $100 lien against Bell's tort recovery. The government, under its Lorenzetti lien, will be reimbursed for its $100 workmen's compensation outlay by the $100 that Bell recovered from his tortfeasor. Travelers will deduct the government's $100 FECA payment from its benefits, thereby paying Bell $100. As a result, Bell's total recovery will remain unchanged at $200.
 
 
 44
 More relevant to the issue of reimbursement, is that the no-fault insurer is unaffected by the third party tort recovery. The no-fault insurer is still obligated to pay $100, representing its $200 in no-fault payments less $100 which it is permitted to deduct as a result of Bell's FECA benefits.[13] The only party reimbursed, directly or indirectly, by Bell's tort recovery is the federal government, whose net outlay under this example is now zero.
 
 
 45
 Under the approach recommended by Bell, the no-fault insurer in the above example would be obligated to pay Bell an additional $100, which would represent the amount of the government lien against Bell's non-economic recovery. In effect, Bell's analysis requires the no-fault insurer to reimburse Bell for Bell's non-economic recovery lost as a result of the government having exercised its Lorenzetti lien.
 
 
 46
 While we observe that Bell's approach would more fully compensate Bell and similarly situated plaintiffs with regard to non-economic loss, we also recognize that such an approach is not countenanced by the provisions of the No-Fault Act, nor can it be inferred from the underlying purpose of the Act. The No-Fault Act's purpose is to provide "prompt and adequate basic loss benefits for motor vehicle accident victims...." Pa.Stat.Ann. tit. 40, Sec. 1009.102(b) (Purdon Supp.1984) (emphasis added.) The federal government's lien deprives Bell only of his non-economic recovery and does not diminish his economic recovery in any way. Thus, the fact that Travelers is under no obligation to reimburse Bell for his non-economic recovery, does not run counter to the purpose of the No-Fault Act as expressed in the statute itself.
 
 
 47
 Moreover, as illustrated above, Travelers' set-off under section 108(a)(3) does not violate section 111(a)(1)(A) by representing a form of indirect reimbursement. The amount of FECA benefits that Bell is entitled to receive from the federal government is not in any way dependent on Bell's third party non-economic tort recovery. As a result, the amount of Travelers' set-off under section 108(a)(3) is also unaffected by Bell's tort action.
 
 
 48
 Thus, under the No-Fault Act, Travelers is required to pay Bell the same amount, whether or not Bell is successful in recovering non-economic damages through a third party tort action. Because Travelers' set-off and ultimate payments are not dependent on Bell's tort recovery, Travelers cannot be described as being "reimbursed" for Bell's non-economic compensation. The district court was therefore correct in its disposition of Bell's claim.V.
 
 
 49
 Bell has made one additional argument before us which merits little discussion. Bell claims that Travelers cannot deduct his FECA payments because they are not "benefits" under the No-Fault Act. Relying on Heusle v. National Mutual Insurance Co., 628 F.2d 833 (3d Cir.1980), Bell contends that the FECA payments he received were "exhaustible" and for that reason were not deductible benefits under section 206(a)[14] of the Act. Exhaustible benefits may be characterized as benefits which terminate after a specified period of time has elapsed, or after a maximum amount of benefits have been paid. This argument fails for a number of reasons.
 
 
 50
 First, the Pennsylvania Supreme Court in Venpanziani v. Insana, 293 Pa.Super. 117, 437 A.2d 1234 (1981) specifically held that a no-fault insurer could deduct Pennsylvania workmen's compensation benefits under section 206(a) of the No-Fault Act. Second, the relevant provision in the instant appeal is not section 206(a), but rather section 108(a)(3) which applies to the Assigned Claims Plan. While section 206(a) provides only for subtraction of certain governmental benefits, section 108(a)(3)[15] is much broader in its scope and provides for the deduction of "all benefits or advantages that [an] individual receives or is entitled to receive as a result of [his] injury." Pa.Stat.Ann. tit. 40, Sec. 1009.108(a)(3) (Purdon Supp.1984) (emphasis added). See also Killeen v. Travelers Insurance Co., 721 F.2d 87, 89 (3d Cir.1983).
 
 VI.
 
 51
 We conclude that the district court was correct in dismissing defendants Wistar and Callahan, and in determining that the Department of Labor was entitled to exercise a lien against Bell's non-economic recovery. We also find that Travelers is responsible for Bell's no-fault benefits, but may deduct from those no-fault payments Bell's entire FECA benefits.[16]
 
 
 52
 Accordingly, we will affirm the district court's order of December 30, 1982 (dismissing Callahan, Wistar, and the Department of Labor) and the district court's order of March 25, 1983. Each party will bear its own costs.
 
 APPENDIX A
 District Court's Order of March 25, 1983
 
 53
 The motion of the plaintiff Warner Bell for summary judgment is GRANTED in part and DENIED in part. The motion of the defendant The Travelers Insurance Company for summary judgment is GRANTED in part and DENIED in part.
 
 
 54
 Judgment is entered in favor of the plaintiff and against the defendant in the amount of $1,754.18 for net work loss sustained from September 6, 1981 to January 26, 1983.
 
 
 55
 Judgment is entered in favor of the plaintiff and against the defendant for $3,013.00 in medical bills not yet paid by the federal government subject to Travelers' right of subrogation when plaintiff is paid such benefits. The amount of $3,013.00 shall represent the following unpaid medical bills:
 
 
 56
 William Burch, M.D. $ 55.00
Louis Yellin 190.00
 175.00
Graduate Hospital 138.00
B.C.R.S.G. 216.00
Paul Cohen, D.D.S. 2239.00
 
 
 57
 Defendant shall pay interest of eighteen percent (18%) per annum accruing upon the above wage loss and medical bills from November 1, 1982 until the time of payment.
 
 
 58
 It is declared that defendant shall pay the plaintiff his net work loss consisting of his weekly loss of earnings less tax advantages minus compensation benefits paid under the Federal Employee Compensation Act. (FECA).
 
 
 59
 The defendant shall accept reasonable proof of the fact and amount of plaintiff's items of loss and make payment of plaintiff's work loss and allowable expense without deduction of any FECA benefits payable to plaintiff which remain unpaid after thirty days of submission of proof to defendant.
 
 
 60
 The defendant shall be subrogated to the plaintiff's right to receive FECA benefits on all items payable under FECA but paid by the defendant due to the above thirty day requirement.
 
 
 61
 The defendant shall not be obligated to reimburse the plaintiff for any amount recovered by the United States as a result of its statutory lien.
 
 
 62
 The plaintiff's request for attorney's fees is DENIED.
 
 
 63
 IT IS SO ORDERED.
 
 CHARLES R. WEINER
 GIBBONS, Circuit Judge, dissenting:
 
 64
 I join in Parts I, II and III of the opinion of the court. Because I believe the trial court erred in holding that the Travelers Insurance Company may deduct from Warner Bell's no-fault benefits the entire amount paid to him under the Federal Employee's Compensation Act (FECA), 5 U.S.C. Secs. 8101, et seq. (1982), I dissent from the judgment in Travelers' favor in that respect.
 
 
 65
 The dispute between Bell and Travelers arises because of two seemingly inconsistent provisions of the Pennsylvania No-Fault Motor Vehicle Insurance Act. Travelers relies on 40 Pa.Cons.Stat.Ann. Sec. 1009.108(a)(3) (Purdon Supp.1984), which provides that "all benefits or advantages that [an] individual receives or is entitled to receive ... shall be subtracted from loss in calculating net loss." Travelers concludes from this provision that when it calculates net loss it is permitted to subtract all FECA payments to which Bell is entitled. Bell asserts that Travelers' position conflicts with Section 111(a)(1)(A) of the Act, which provides that "an obligor ... does not have and may not contract, directly or indirectly, in whole or in part, for a right of reimbursement from or subrogation to the proceeds of a victim's ... cause of action for noneconomic detriment ...." 40 Pa.Cons.Stat.Ann. Sec. 1009.111(a)(1)(A) (Purdon Supp.1984). This provision is included in the statute because the No-Fault Act compensates victims only for economic loss. Therefore, the carrier may be subrogated to the victim's claims for economic loss (such as medical bills or lost pay) against other parties. Claims for noneconomic loss (such as pain and suffering) may not be subrogated because the no-fault insurance carrier does not compensate the claimant for this loss.
 
 
 66
 FECA compensates federal employees only for economic loss. The Supreme Court has held, however, that Congress intended to allow the United States to be subrogated to claims for noneconomic loss as well as economic loss. United States v. Lorenzetti, --- U.S. ----, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984). The result of the Lorenzetti holding in this case is that Bell receives a specified compensation for economic loss under FECA; any additional damages Bell may receive for noneconomic loss are returned to the United States, under the statutory lien, to the extent that the United States has paid compensation. Bell's FECA benefits are effectively reduced by the amount of his recovery for noneconomic loss. Therefore, those FECA payments recouped by the federal government under Lorenzetti are not a "benefit" to Bell at all. Bell's net recovery does not change. The award for noneconomic loss in reality benefits the government, not Bell. Thus it does not fall within the language of section 108(a)(3).
 
 
 67
 In contrast with congressional intent in enacting FECA (at least the intent found by the Supreme Court in Lorenzetti ), the Pennsylvania legislature clearly did not intend that no-fault insurance companies be subrogated to, or be reimbursed for proceeds of a victim's cause of action for noneconomic losses such as pain and suffering. In this case, deduction of all FECA payments in calculating net loss would effectively reimburse Travelers for Bell's recovery of damages for such noneconomic loss. If, as Travelers urges, all FECA payments are deducted from Bell's no-fault recovery. Bell probably will collect no damages for noneconomic loss in addition to the no-fault compensation for economic loss. He will be barred from any compensation for pain and suffering, unless the award for pain and suffering exceeds the total of his FECA benefits.
 
 
 68
 Section 108(a)(3), which provides for deduction of benefits in calculating net loss, can be read in a way that is consistent with legislative intent to allow claimants to recover for noneconomic loss. Under section 206(a) "all benefits or advantages ... shall be subtracted from loss in calculating net loss." Travelers and the majority incorrectly equate "benefits" with "payments." The words "benefits or advantages" should be given their plain meaning. The "benefit" received by Bell in this case is not the entire FECA payment, but only that which is beyond what Bell would have received anyway. Since Bell's receipt of noneconomic damages against Callahan and Wistar is unrelated to his receipt of FECA payments, "benefit" should be measured by subtracting an amount equal to the statutory lien, a "benefit" only to the United States.
 
 
 69
 Thus I would reverse the judgment appealed from insofar as it permits Travelers to deduct from its no-fault obligation amounts recovered from Callahan and Wistar for the benefit of the United States.
 
 
 
 *
 Honorable Hubert I. Teitelbaum, United States District Court for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Pursuant to Section 108(b) of the No-Fault Act, Pa.Stat.Ann. tit. 40, Sec. 1009.108(b) (Purdon Supp.1984), all insurance companies in Pennsylvania are members of the Assigned Claims Plan, and they are assessed on a pro-rata basis by the Plan for all benefits paid by the Plan
 
 
 [2]
 Bell v. United States Dep't. of Labor, 560 F.Supp. 515 (E.D.Pa.1983)
 
 
 [3]
 In relevant part, 5 U.S.C. Sec. 8132 (1982) provides:
 If an injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury. No court, insurer, attorney, or other person shall pay or distribute to the beneficiary of his designee the proceeds of such suit or settlement without first satisfying or assuring satisfaction of the interest of the United States.
 
 
 [4]
 The district court's order of March 25, 1983 appears as a part of the district court's opinion, Bell, supra, 560 F.Supp. at 525. For ease of reference, the district court's order is reproduced in full in Appendix A attached to this opinion
 
 
 [5]
 Section 501 provides:
 The obligor obligated to pay basic loss benefits for accidental bodily injury to a person occupying a motor vehicle, the owner of which is uninsured pursuant to this act or to the spouse or relative resident in the household of the owner or registrant of such motor vehicle, shall be entitled to recover all the benefits paid and appropriate loss or adjustments costs incurred from the owner or registrant of such motor vehicle or from his estate. The failure of the person to make payment within thirty days shall be grounds for suspension or revocation of his motor vehicle registration and operator's license.
 Pa.Stat.Ann. tit. 40, Sec. 1009.501 (Purdon Supp.1984).
 
 
 [6]
 Section 110(c)(1) provides:
 The basis loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault plan in effect or if the victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs.
 Pa.Stat.Ann. tit. 40, Sec. 1009.110(c)(1) (Purdon Supp.1984).
 
 
 [7]
 Section 204 provides:
 (a) Applicable security.--The security for the payment of basic loss benefits applicable to an injury to:
 (1) an employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if none, any other security applicable to such victim;
 (2) an insured is the security under which the victim or deceased victim is insured;
 (3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle;
 (4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. For purposes of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident, unless it was parked so as to cause unreasonable risk of injury; and
 (5) any other individual is the applicable assigned claims plan.
 Pa.Stat.Ann. tit. 40, Sec. 1009.204(a) (Purdon Supp.1984).
 
 
 [8]
 Federal regulation provides in relevant part that "[m]otor vehicles acquired for official purposes and regularly housed outside the District of Columbia need not be registered in the States, territories, or possessions in which they are primarily used...." 41 C.F.R. Sec. 101-38.202 (1983)
 
 
 [9]
 Section 1302(a) of Pennsylvania's Vehicle Code provides:
 No vehicle shall be operated upon any highway in this Commonwealth until the vehicle is properly registered with the department as provided in this chapter.
 
 
 [75]
 Pa.Cons.Stat.Ann. Sec. 1302(a) (Purdon 1977). Section 102 of the Vehicle Code defines "vehicle" as:
 Every device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon rails or tracks.
 
 
 [75]
 Pa.Cons.Stat.Ann. Sec. 102 (Purdon 1977)
 A truck is not used on rails or tracks, but rather is designed and used for highway transportation. As such, a truck clearly comes under the Code's definition of "vehicle." Therefore, if it were not for the federal regulation to the contrary, see supra, note 8, the truck in which Bell was injured would be required to be registered in Pennsylvania.
 
 
 [10]
 Under the Pennsylvania Statutory Construction Act of 1972, "[t]he title and preamble of a statute may be considered in the construction thereof." Pa.Stat.Ann. tit. 1, Sec. 1924 (Purdon Supp.1984)
 
 
 [11]
 Section 108(a)(3) provides:
 If an individual receives basic loss benefits through the assigned claims plan for any reason other than because of the financial inability of an obligor to fulfill its obligation, all benefits or advantages that such individual receives or is entitled to receive as a result of such injury, other than life insurance benefits or benefits by way of succession at death or in discharge of familial obligations of support, shall be subtracted from loss in calculating net loss.
 Pa.Stat.Ann. tit. 40, Sec. 1009.108(a)(3) (Purdon Supp.1984).
 
 
 [12]
 Section 111(a)(1)(A) provides:
 (a) Reimbursement and subrogation.--
 (1) Except as provided in paragraphs (2) and (3) of this subsection, an obligor:
 (A) does not have and may not contract, directly or indirectly, in whole or in part, for a right of reimbursement from or subrogation to the proceeds of a victim's claim for relief or to a victim's cause of action for noneconomic detriment....
 Pa.Stat.Ann. tit. 40, Sec. 1009.111(a)(1)(A) (Purdon Supp.1984).
 
 
 [13]
 The dissent states: "In this case, deduction of all FECA payments in calculating net loss would effectively reimburse Travelers for Bell's recovery of damages for such noneconomic loss." (Dissenting opinion, at 504). Contrary to the dissent's characterization, the no-fault carrier, in this case Travelers, is not reimbursed by any third party recovery which Bell may obtain. Travelers may offset its payments to Bell by the amount which the government has paid Bell as FECA benefits. FECA benefits, by definition, are wholly economic. As a consequence, Travelers receives no reimbursement whatsoever from Bell's non-economic third party recovery. It is only the government which offsets Bell's economic benefits and it does so only because of the Supreme Court's decision in United States v. Lorenzetti, --- U.S. ----. 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984). Thus, the dissent's argument, which claims that Travelers would effectively be reimbursed for Bell's non-economic loss, is both analytically and factually incorrect. In essence, the dissent would overrule section 108(a)(3) of Pennsylvania's No-Fault Act, which allows the no-fault insurer to deduct workmen's compensation benefits, which by their nature are solely economic in character
 Moreover, the dissent's "benefit" theory would lead to a shifting benefit formula. Under the dissent's theory, no benefits received by Bell under FECA would be considered "benefits" and therefore available for offset under section 108(a)(3) by Travelers until such time as any third party litigation had been concluded. This would be so because a recovery from a third party of non-economic damages would diminish the FECA benefits to the extent of a third party recovery and thereby diminish the "benefit" to Bell. There is no indication that Pennsylvania's No-Fault statute ever intended such an open-ended result. To the contrary, the purpose of the No-Fault Act, as reported in its text, is to provide "prompt and adequate basic loss benefits." Pa.Stat.Ann. tit. 40, Sec. 1009.102(b) (Purdon Supp.1984) (emphasis added).
 
 
 [14]
 Section 206(a) provides:
 Except as provided in section 108(a)(3) of this act, all benefits or advantages (less reasonably incurred collection costs) that an individual receives or is entitled to receive from social security (except those benefits provided under Title XIX of the Social Security Act and except those medicare benefits to which a person's entitlement depends upon use of his so-called "life-time reserve" of benefit days) workmen's compensation, any State-required temporary, nonoccupational disability insurance, and all other benefits (except the proceeds of life insurance) received by or available to an individual because of the injury from any government, unless the law authorizing or providing for such benefits or advantages makes them excess or secondary to the benefits in accordance with this act, shall be subtracted from loss in calculating net loss.
 Pa.Stat.Ann. tit. 40, Sec. 1009.206(a) (Purdon Supp.1984) (footnotes omitted).
 
 
 [15]
 Section 108(a)(3) provides:
 If an individual receives basic loss benefits through the assigned claims plan for any reason other than because of the financial inability of an obligor to fulfill its obligation, all benefits or advantages that such individual receives or is entitled to receive as a result of such injury, other than life insurance benefits or benefits by way of succession at death or in discharge of familial obligations of support, shall be subtracted from loss in calculating net loss.
 Pa.Stat.Ann. tit. 40, Sec. 1009.108(a)(3) (Purdon Supp.1984).
 
 
 [16]
 We note that two issues argued before the district court have not been raised before us on appeal. First, Travelers had argued that it was not obligated to make no-fault payments for overdue bills for which the government was responsible under FECA. The district court in its March 25, 1983 order, resolved that issue in Bell's favor. Second, Bell had argued that he was entitled to attorneys' fees under section 107(3) of the No-Fault Act, Pa.Stat.Ann. tit. 40, Sec. 1009.107(3) (Purdon Supp.1984). The district court decided that issue in Travelers' favor. We do not reach or decide these questions inasmuch as they have not been raised on appeal