## COUNTY WORKERS COMPENSATION POOL, Plaintiff–Appellant,

v.

## Deah N. FOLK and Cyndee M. Sanchez, Defendants–Appellees.

### No. 93CA1353.

Colorado Court of Appeals,
Div. IV.

Sept. 8, 1994.

Rehearing Denied Sept. 29, 1994.

Certiorari Denied June 5, 1995.

Shand, McLachlan & Newbold, P.C., Michael E. McLachlan, Durango, for plaintiff-appellant.

Hall & Evans, L.L.C., Alan Epstein, Denver, for defendant-appellee Deah N. Folk.

Crane, Leake, Casey & Ehlers, P.C., James A. Casey, Durango, for defendant-appellee Cyndee M. Sanchez.

Opinion by Judge DAVIDSON.

In this subrogation action to recoup workers' compensation benefits paid to its claimant in connection with an automobile accident, plaintiff, the County Workers Compensation Pool, appeals from the summary judgment dismissing the negligence action against defendants, Deah N. Folk and Cyndee M. Sanchez. At issue is whether claimant was entitled to personal injury protection (PIP) benefits under his own insurance policy. Because we hold the definition of a "motor vehicle" in claimant's insurance policy covered the county-owned sheriff's patrol car claimant was driving at the time of the accident, we conclude that claimant was eligible for PIP benefits. Therefore, we affirm.

The relevant facts are not in dispute. While driving a sheriff's patrol car in the course of his employment, claimant, Frank Adams, a sheriff's deputy for La Plata County, was injured as a result of the alleged negligence of defendants. The car being driven by Adams at the time of the accident was owned by the La Plata County Sheriff's Department. However, as permitted by the then applicable registration requirements, the vehicle was neither registered nor licensed in Colorado.

Adams filed a personal injury action against defendants. Asserting that plaintiff had a statutory right of subrogation as Adams' workers' compensation carrier because it had provided workers' compensation benefits to Adams as a result of the accident, plaintiff moved to intervene. That motion was granted.

In response to subsequent cross-motions for summary judgment, the trial court granted defendants' motion for summary judgment and dismissed plaintiff's complaint in intervention. The court ruled that Adams was eligible for PIP benefits under his personal insurance policy. Thus, it concluded that, under *Tate v. Industrial Claim Appeals Office*, 815 P.2d 15 (Colo.1991), plaintiff had no subrogation right of action against defendants.

### A.

The parties do not dispute, and we agree, that, if Adams was eligible for PIP benefits,

then *Tate v. Industrial Claim Appeals Office, supra,* bars his workers' compensation carrier from asserting a subrogation claim against the alleged tortfeasors.

In *Tate,* the court held that when PIP benefits would be payable by an injured party's no-fault insurance carrier but for the work-related nature of the accident, the PIP benefits exclusion in Colorado's No–Fault Act prohibits the workers' compensation carrier from pursuing a claim in subrogation against the tortfeasor.

■■■ When an individual is injured in an automobile accident during the course and scope of his employment, both the Workers' Compensation Act, § 8–40–101, et seq., C.R.S. (1993 Cum.Supp.), and the Colorado Auto Accident Reparations Act, § 10–4–701, et seq., C.R.S. (1987 Repl.Vol. 4A) (the No–Fault Act) apply. Under the primacy rule set forth in the No–Fault Act, an injured employee must pursue and exhaust a right to workers' compensation benefits before the employee can collect PIP benefits. *Comiskey v. Valley Forge Insurance Co.,* 781 P.2d 188 (Colo.App.1989); § 10–4–707(5), C.R.S. (1993 Cum.Supp.). The amount of PIP benefits is reduced by the amount of workers' compensation benefits received; the workers' compensation benefits take the place of PIP benefits.

■■■ The PIP benefits exclusion, § 10–4–713(1), C.R.S. (1993 Cum.Supp.), abrogates the workers' compensation insurer's subrogation rights under § 8–41–203(1), C.R.S. (1993 Cum.Supp.) to recover directly from a tortfeasor, to the extent that the workers' compensation benefits replace the PIP benefits. *Tate v. Industrial Claim Appeals Office, supra.*

■■■ If the injured employee is eligible for PIP benefits, then the PIP benefits exclusion applies. Although an injured employee actually receives workers' compensation benefits in place of PIP benefits, he is considered to be *eligible* for PIP benefits. *Tate v. Industrial Claim Appeals Office, supra.*

**B.**

■■ Plaintiff contends that Adams was not eligible for PIP benefits and that, therefore, *Tate* is inapplicable. Plaintiff asserts that the sheriff's patrol car Adams was driving was not considered a "motor vehicle" under the terms of either the No–Fault Act or Adams' personal no-fault insurance policy. We conclude the vehicle was covered by the terms of Adams' own policy.

**1.**

Defendants admit, and we agree, that the county-owned sheriff's patrol car did not fall within the No–Fault Act's definition of a "motor vehicle" because, at the time of the accident, it was not required to be registered. *See* Colo.Sess.Laws 1969, ch. 47, § 13–3–2(3) at 130.

Eligibility for PIP benefits in this case is determined by § 10–4–707(1)(a), C.R.S. (1987 Repl.Vol. 4A), which provides that PIP benefits are available for "[a]ccidental bodily injury sustained by the named insured when injured in an accident involving any *motor vehicle....*" (emphasis supplied)

For purposes of § 10–4–707(1)(a), a "motor vehicle" is defined as, "any motor vehicle required to be registered and licensed for operation on the public highways of this state or any other jurisdiction." Section 10–4–707(2), C.R.S. (1987 Repl.Vol. 4A). At the time of the accident, registration was not required for vehicles owned by the State of Colorado or any agency or institution thereof. Colo.Sess.Laws 1969, ch. 47, § 13–3–2(3) at 130.

Thus, because the sheriff's vehicle was not required to be registered and licensed at the time of the accident, La Plata County was statutorily exempt from complying with the No–Fault Act. Hence, La Plata County was not required to, and did not, have PIP benefit coverage for the vehicle driven by Adams. *See Bushnell v. Sapp,* 194 Colo. 273, 571 P.2d 1100 (1977).

**2.**

However, Adams had his own no-fault insurance policy at the time of the accident issued by Prudential Property and Casualty

Insurance Company. In its description of its PIP benefit coverage, the Prudential policy states:

Motor vehicle means any motor vehicle, including trailers, *of a type* required to be registered and licensed for operation on the public highways of Colorado. (emphasis supplied)

Defendants contend that the meaning of "motor vehicle" under the No–Fault Act is not dispositive of how the term "motor vehicle" in the Prudential policy should be interpreted, even though the two definitions are similar. Defendants assert that the phrase "of a type" in the Prudential policy alters the meaning of the motor vehicle definition. We agree.

An insurance policy is a contract that should be interpreted consistently with principles of contract law. Words should be given their plain and ordinary meaning. If a contractual provision is clear and unambiguous, the court should not rewrite it to arrive at a strained construction. However, when a contractual provision is reasonably susceptible to different meanings, it must be construed against the drafter and in favor of providing coverage to the insured. *Swentkowski v. Dawson,* 881 P.2d 437 (Colo.App. 1994).

A division of this court recently interpreted similar "of a type" prefatory language in a registration-based definition of a "motor vehicle." *Ranger v. Fortune Insurance Co.,* 881 P.2d 394 (Colo.App.1994). At issue in *Ranger* was the definition of "motor vehicle" under § 10–4–703(7), C.R.S. (1987 Repl.Vol. 4A), which is the general definition of a motor vehicle under the No–Fault Act. Section 10–4–703(7) defines motor vehicle as:

any vehicle *of a type* required to be registered and licensed under the laws of this state and which is designed to be propelled by an engine.... (emphasis added)

Given the beneficent purpose of the No–Fault Act, the *Ranger* court concluded that the definition above includes "any vehicle having the physical characteristics which require registration and licensing." We adopt the same construction of the words "of a type" in this case.

Plaintiff asserts that the words "of a type" should not be interpreted to include vehicles, such as county-owned police vehicles, which are expressly exempt from registration. We disagree.

The United States Court of Appeals for the Third Circuit concluded in *Bell v. United States,* 754 F.2d 490, 498 (3d Cir.1985), that a federally owned vehicle not required to be registered under state law was, nevertheless, a "motor vehicle" under that state's no-fault act, which defined a motor vehicle as a "vehicle of a kind required to be registered" under state law. Although the vehicle was not required to be registered under state law by virtue of its federal ownership, the court concluded that the words "of a kind" expanded the definition of motor vehicle to encompass not only vehicles required to be registered under state law, but also those vehicles generically similar to vehicles required to be registered. Such construction, the *Bell* court reasoned, properly gave effect to all of the words in the definition.

Here, the vehicle driven by Adams is generically the variety of vehicle required to be registered under Colorado's Uniform Motor Vehicle Law, § 42–1–102(46), C.R.S. (1993 Repl.Vol. 17), which defines a "motor vehicle" as:

any self-propelled vehicle which is designed primarily for travel on the public highways and which is generally and commonly used to transport persons and property over the public highways....

Although the vehicle was not legally required to be registered by reason of its ownership, it shared all of the physical characteristics of a vehicle that would have to be registered if it were not owned by the county. *Cf. Bertrand v. Board of County Commissioners,* 872 P.2d 223, 229 (Colo.1994) (for purpose of governmental immunity act, a motor vehicle is "any vehicle on wheels having its own motor and not running on rails or tracks, for use on streets or highways").

We note that, at the time the General Assembly first adopted the definition of a "motor vehicle" as part of the No–Fault Act, a public entity was deemed to have waived its sovereign immunity if it provided insurance

coverage to insure itself or its employees from liability. *Compare* Colo.Sess.Laws 1971, ch. 323, § 130–11–4(1) at 1205–1206 *with* § 10–4–715(1)(a), C.R.S. (1987 Repl.Vol. 4A) (permits governmental agencies to carry no-fault insurance.). Hence, the definition of the term "motor vehicle" in the No–Fault Act served to protect sovereign immunity by exempting public entities that were not obligated to register their vehicles from the mandatory obligation to maintain no-fault insurance coverage. *See* §§ 10–4–705 and 10–4–706, C.R.S. (1987 Repl.Vol. 4A). No such policy considerations impinge upon our consideration of Prudential's definition of a "motor vehicle."

We conclude that the automobile Adams was driving was a "motor vehicle" for purposes of his personal insurance policy and, therefore, that Adams was eligible for PIP benefits. Hence, under *Tate v. Industrial Claim Appeals Office, supra,* plaintiff has no statutory right of subrogation against defendants.

The judgment is affirmed.

HUME and PIERCE *, JJ., concur.