753 F.2d 262
 Rebecca L. CUNNINGHAM, an individual, Appellant
v.
The CITY OF McKEESPORT, William Weissert, Samuel R.
Vidnovic, Gerald F. Boyle, Joseph P. Graziano, James
Heatherington, Charles A. Sharbaugh, Nicholas J. Skezas,
Carolyn O. Young and Omslaer Wrecking Co., Robert Clyde
Omslaer t/d/b/a Omslaer Wrecking Company.
 No. 84-3209.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 25, 1984.
Decided Jan. 15, 1985.
Rehearing and Rehearing En Banc
Denied Feb. 13, 1985.
 
 James R. Cooney (Argued), Nernberg & Laffey, Pittsburgh, Pa., for appellant.
 Deborah R. Olszewski (Argued), Trushel, Wood & Israel, Pittsburgh, Pa., for appellees.
 Before GIBBONS and BECKER, Circuit Judges, and KATZ, District Judge*.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 Rebecca Cunningham, a successful plaintiff in a civil action brought pursuant to 42 U.S.C. Sec. 1983 (1982) against the City of McKeesport, Pennsylvania, its building inspector, and others, appeals from the judgment awarding attorneys' fees. Pursuant to 42 U.S.C. Sec. 1988 (1982), she requested a fee award of $35,887.50. The court awarded $5,875.00. Cunningham contends that the court erred in reducing the requested fees to this extent. Because the court did not properly apply the standards applicable for statutory fee awards in this circuit, we reverse.
 
 I.
 The Underlying Case
 
 2
 Cunningham, in 1980, purchased an unoccupied house and garage in the City of McKeesport from the United States Department of Housing and Urban Development for $2,700. Cunningham made some minor repairs. She then applied for a subsidized loan from the Improvement Program of Allegheny County (IMPAC) which approved a $15,000 interest-free loan to be repaid in fifteen years. Cunningham, intending to live in this house, then contracted to have the property rehabilitated for $15,000. Before the rehabilitation work could be commenced, without prior notice to Cunningham, the City of McKeesport demolished the house and garage.
 
 
 3
 To seek redress, Cunningham retained the Pittsburgh firm of Nernberg & Laffey which accepted her case on a contingent fee basis. It assigned primary responsibility to an associate, James R. Cooney, who, after investigating the circumstances leading to the demolition, filed a complaint on her behalf charging that the defendants had deprived her of property without due process. The complaint sought recovery for the post-renovation market value of the house, for loss of the opportunity to receive the $15,000 interest free loan, for emotional distress, and for punitive damages. The defendants contested both liability and damages, and asserted several affirmative defenses including immunity. Both parties engaged in extensive discovery. At a pretrial conference the trial court ordered that briefs be filed on a number of contested issues, and that the parties submit proposed points for charge with legal citations for each point raised.
 
 
 4
 Trial began on April 12, 1983 and continued through April 15, 1983. At the end of the plaintiff's case the trial court directed a verdict in favor of some defendants. The trial continued against the City, the building inspector, and the demolition contractor. The case was submitted to the jury on special verdict interrogatories. The jury returned a verdict in favor of the demolition contractor, but against the City and the building inspector. It found that these defendants had deprived her of property without due process of law in violation of 42 U.S.C. Sec. 1983. In answer to the question "[w]hat was the market value, if any, of plaintiff Rebecca Cunningham's house and garage immediately prior to demolition?" the jury answered $20,000. In answer to the question "[w]hat damages, if any, is plaintiff Rebecca Cunningham to recover for the loss of the IMPAC loan?" the jury answered $15,000. Thus the verdict would support a judgment in Cunningham's favor for $35,000.
 
 
 5
 Following the verdict the City and the building inspector moved for a new trial on the ground that the court erred in admitting testimony concerning the interest-free loan. They also moved for a remittitur on the ground that the jury verdict finding a value of $20,000 for the house and garage was not supported by the evidence. They urged, as well, that the court committed several trial errors requiring a new trial. Cunningham moved to amend the verdict to include pre-judgment interest. The trial court, by order, directed that the parties file briefs on these motions.
 
 
 6
 In its ruling on the post-trial motions the trial court declined to award Cunningham pre-judgment interest, reduced the award for destruction of the house and garage to $17,000, and held that the value of the interest-free loan was not a proper element of damages. It denied the defendants' motion for a new trial. Judgment was entered in Cunningham's favor against the City and the building inspector for $17,000. Neither party has appealed from this part of the judgment although counsel for Cunningham advised her that the verdict should not have been reduced.
 
 II.
 The Fee Award
 
 7
 Cunningham filed a timely motion, pursuant to 42 U.S.C. Sec. 1988 (1982) for an award of counsel fees. In support of that motion she filed the affidavit of James R. Cooney. That affidavit states in detail the number of hours spent by Cooney in various stages of trial preparation and trial. Cooney claims he spent 50 hours prior to filing the complaint, 247.75 hours in pretrial discovery activities, trial preparation, and trial, and 16.75 hours on post-trial motions; a total of 314.50 hours. In addition, W. Thomas Laffey, a partner in Nernberg & Laffey, spent 11.5 hours in trial preparation activities. Laffey also spent 32 hours giving direction and supervision to Mr. Cooney, for which no compensation was sought.
 
 
 8
 Cooney's affidavit states that "[t]he ordinary billing rate for work performed by Mr. Cooney during the course of this case was $100.00 per hour, and the ordinary billing rate for work performed by Mr. Laffey during the course of this case was $125.00 per hour all on a monthly basis." Cooney Affidavit, App. 55a. It also states that "[o]f the total work performed by Nernberg & Laffey, approximately 75% of the work is performed on a per hour basis, with the balance of approximately 25% of the work performed being in the nature of personal injury/contingent fee litigation. During the pendency of this case, a substantial amount of the work performed and hours expended on this matter were diverted from other work pending in the office which could have been billed at a per hour fee charge." Cooney Affidavit, App. 56a.
 
 
 9
 The defendants filed no affidavits in opposition to the motion for an award of counsel fees, and did not seek an opportunity to cross-examine Cooney on his affidavit. Thus no challenge was made to the accuracy of the Cooney affidavit. Instead a brief was filed advancing two legal arguments. Defendants contended, first, that since Cunningham had agreed to a contingent fee arrangement, she should not be permitted to recover a fee under section 1988. Alternatively they argued that since Cunningham was pursuing vindication of her own civil rights, not those of the public at large, she is not entitled to a section 1988 award.
 
 
 10
 Despite the fact that Cooney's affidavit was uncontradicted, on February 14, 1984, the trial court ordered that counsel for Cunningham file a supplemental affidavit setting forth the precise number of hours devoted to specific tasks. The court also ordered disclosure of the contingent fee agreement. Counsel complied with this order, filing a new affidavit on March 6, 1984. No opposing affidavit was filed by the defendants; no request was made to cross-examine Cooney; no further briefing occurred; no argument was held. On March 19, 1984 the court entered an order awarding $5,875.
 
 
 11
 In justifying this figure the trial court disallowed all but 219 hours of the time set forth in Cooney's affidavit. Moreover it disregarded Cooney's sworn statement that Nernberg & Laffey ordinarily billed $100 per hour for his time, awarding instead, $50 per hour. This produced a lodestar calculation for time spent on the case of $10,950, which was then reduced by 50%. In supporting that downward adjustment the court reasoned:
 
 
 12
 The Lindy amount as calculated above will be subject to a post-Lindy discretionary adjustment. See, Ursic v. Bethlehem Mines, 719 F.2d at 677. Plaintiff's counsel did not successfully advance new law which might serve the public interest in the future. The decision affected only an individual plaintiff who was subject to an isolated act of deprivation for which she was adequately compensated. There was no indication of bad faith in defense of the action. See Swicker v. William Armstrong & Sons, Inc., 484 F.Supp. 762, 766 (E.D.Pa.1980). In light of these considerations, a reduction of the Lindy amount by 50% to $5475 is fair and equitable in this case.
 
 
 13
 App. 80a. Cunningham requested compensation for 15 hours devoted to prosecution of the fee petition. The court concluded that only 8 hours should reasonably have been devoted to that task, and awarded $400. Thus the total award was $5875.[1]
 
 III.
 Our Ruling
 
 14
 It has long been settled in this court that the standards for resolution of disputes over attorneys' fees in statutory fee cases are those first announced for fund in court cases in Lindy Bros. Bldrs., Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161, 165 (3d Cir.1973) (Lindy I ).[2] Recently we resurveyed those standards in In re Fine Paper Antitrust Litigation, 751 F.2d 562 (3d Cir.1984). Under the governing law in the Circuit the judgment of the district court must be reversed.
 
 A. Calculation of the Lodestar
 
 15
 Disputes over awards of attorneys' fees, whether in equitable fund cases or in statutory fee cases, must be resolved in a manner which affords the parties an opportunity for a hearing to present evidence on disputed issues of fact as to what hours should be included in the lodestar amount. Id. at 584. In statutory fee cases, however, when an opposing party has been afforded the opportunity to raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure, and declines to do so, no reason occurs to us for permitting the trial court to disregard uncontested affidavits filed by a fee applicant. In fund in court cases, because of the potential for conflicts of interest between the attorneys seeking compensation and their clients, the trial court has an independent duty to scrutinize fee applications. Even in that situation we have consistently held that there must be a record basis for the court's rulings. That is a fortiori the case where, as here, the fee proceeding is genuinely adversarial.
 
 
 16
 We recognize that in some respects fee applications involve matters of which the trial court has personal knowledge. That is true here, however, only with respect to the time spent in pretrial conferences and in trial. Of the fifteen categories of activity for which lodestar time was disallowed, only three are activities as to which the court arguably had personal knowledge. These activities are a status conference for which Cunningham seeks 1.5 hours, but for which the court allowed .5 hours; a pretrial conference for which she sought 3.75 hours but was allowed 1 hour; and the trial, over 4 days, for which she sought 32 hours, but was allowed 22. Even as to these activities the trial court did not make an explicit finding that the 13.75 disallowed hours were not in fact expended on the case. Nevertheless, while explicit findings as to these hours would be preferable, we cannot find an abuse of discretion, given the trial court's proximity to these phases of the litigation. As to the remaining lodestar time disallowed, there is simply no record basis for the disallowance. The activity categories in question all involved activities outside the presence of the court; the defendants never put in issue the accuracy of Cooney's affidavits. The trial court states that "[t]aking into consideration the experience of counsel, as discussed below, nonetheless the 318.5 hours spent were excessive and duplicative." App. 78a. There are no subsidiary findings in support of this conclusory statement, and there is no evidence in the record which would support such findings had they been made.
 
 
 17
 The fee applicant would have been entitled to offer evidence in support of the reasonableness of her request had the defendants put in issue either the fact that certain time had been spent, or the necessity for doing so. In re Fine Paper, 751 F.2d at 583-584. No such opportunity was afforded here, because the defendants filed no opposing affidavits and sought no evidentiary hearing. Instead, they opposed the fee application on two legal grounds, one of which the trial court did not adopt.
 
 
 18
 On this record, therefore, we must hold that the trial court erred in reducing the lodestar amount from 314.50 hours for Mr. Cooney's time and 11.5 hours for that of Mr. Laffey, to a total of 219 hours for Mr. Cooney's time alone.[3]
 
 B. Use of Hypothetical Time Charges
 
 19
 In the seminal Lindy I opinion this court held that the value of an attorney's time is generally reflected in his normal billing rate. Our premise was then, and still is, that the reasonable value of an attorney's time is the price that time normally commands in the marketplace for legal services in which those services are offered. Within the month we have reiterated that rule. In re Fine Paper, 751 F.2d at 590-591.
 
 
 20
 Cooney's affidavit to the effect that his firm normally bills his time at $100 per hour is on this record uncontradicted. The trial court took judicial notice that in the Western District of Pennsylvania able and experienced trial counsel charge $100 per hour, and observed that Cooney is relatively inexperienced. But while he must be inexperienced, since he is a recent law school graduate, there is nothing in this record casting any doubt upon the truth of the representation that his firm bills $100 per hour for his time. Attorneys are not fungible. Some, shortly out of law school, may command in the marketplace charges for their time that others do not command after a lifetime of pedestrian practice. From Lindy I through In re Fine Paper we have consistently held that the lodestar calculation must be based on historical time charges for individual attorneys. What those time charges are is a factual question. Since Cooney's affidavit is uncontradicted, there is no material issue of fact. The lodestar for his time should have been calculated at $100 per hour.
 
 C. The Negative Multiplier
 
 21
 In Lindy I this court held that an affirmative or negative multiplier could be applied to the lodestar amount after consideration of "the complexity and novelty of the issues presented, the quality of the work that the judge has been able to observe, and the amount of the recovery obtained." 487 F.2d at 168. We have also held that "[t]he heavy burden of proving entitlement to such an adjustment is on the moving party." Lindy II, 540 F.2d at 118. In this instance the defendants made no effort, factually, to carry that burden. Instead they made two legal arguments.
 
 
 22
 The first argument, rejected by the trial court without discussion, is that Cunningham should not receive a fee award under section 1988 because she found an attorney who was willing to undertake her case on a contingent fee basis. The court's decision is in this respect unquestionably sound. The Civil Rights Attorney's Fees Awards Act of 1976, Pub.L. No. 94-559, 90 Stat. 2641, amending 42 U.S.C. Sec. 1988, was passed to overrule the holding in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) that the so-called "American Rule" barred an award of counsel fees to successful litigants, insofar as it applied to civil rights cases. The statute contains no contingent fee exception. Buxton v. Patel, 595 F.2d 1182, 1185 n. 3 (9th Cir.1979); Sargeant v. Sharp, 579 F.2d 645, 648 (1st Cir.1978).
 
 
 23
 The second argument, predicated on Zarcone v. Perry, 581 F.2d 1039 (2d Cir.1978), is that because Cunningham sought recovery for herself alone she was not acting as a "private attorney general," vindicating interests of the public at large, and thus an award of fees is unnecessary to achieve the purpose of the Civil Rights Act. The trial court appears to have relied on this argument in reducing the lodestar amount by 50 per cent.
 
 
 24
 We review quality multiplier determinations for abuse of discretion. In reviewing the exercise of discretion in light of supportable factual premises, we must consider whether the court has taken into account properly relevant considerations. When a trial court gives weight to improper considerations it abuses its discretion or commits legal error. In re Fine Paper, 751 F.2d at 584; In re Japanese Electronic Products Antitrust Litigation, 723 F.2d 238, 263, 265, 277, 302 (3d Cir.1983).
 
 
 25
 We find such an abuse in this case. We start with the observation that civil rights are held not by the public at large, but by individuals. Some rights, such as those protected by the first amendment, are enjoyed by individuals in common with other individuals. Others, such as property rights, are in their nature singular; their very definition denotes singularity. Thus a claim that property has been destroyed by the state without due process of law will always present a claim unique to the plaintiff. Such uniqueness does not, however, place it outside the ambit of the Civil Rights Act of 1871 or the Civil Rights Attorney's Fees Awards Act of 1976. No case in this court has ever suggested that a negative quality multiplier may be applied to a fee award simply because the civil right in question was by its nature singular to the plaintiff. If the Second Circuit case of Zarcone v. Perry, on which the defendants rely, suggests otherwise, that viewpoint has never been espoused by this court. Moreover even in the Second Circuit the Court of Appeals has not interpreted Zarcone v. Perry as holding that under section 1988 attorneys' fees should be denied on the basis of the "private" nature of the lawsuit. Wheatley v. Ford, 679 F.2d 1037, 1040 (2d Cir.1982); Milwe v. Cavuoto, 653 F.2d 80, 83 (2d Cir.1981).
 
 
 26
 The trial court also mentioned that "[t]here was no indication of bad faith in the defense of the action." Whatever weight the defendants' good faith may have in considering a contingency multiplier, it is entirely irrelevant to a negative multiplier. Obviously Congress, when it passed the Civil Rights Attorney's Fees Awards Act of 1976, contemplated that civil rights cases would be defended in good faith. The risk that such defense will result in the expenditure of time by attorneys for plaintiffs has, however, been allocated by Congress to the party asserting the defense. The statute does not require a finding of bad faith, and cannot be interpreted as permitting the reduction of an otherwise proper lodestar amount because of good faith.
 
 
 27
 Finally, the trial court spoke of a "post-Lindy discretionary adjustment." If the trial court assumed that the carefully crafted set of rules for the exercise of district court discretion in fee award cases which this court worked out in Lindy I and Lindy II has been abandoned in favor of some standardless rule of district court gestalt, that assumption is incorrect. See In re Fine Paper. As we said in Prandini v. National Tea Company, 585 F.2d 47, 52 (3d Cir.1978):
 
 
 28
 District courts, in awarding attorneys' fees, may not reduce an award by a particular percentage or amount (albeit for justifiable reasons) in an arbitrary or indiscriminate fashion. If the court believes that a fee reduction in the lodestar is indicated, it must analyze the circumstances requiring the reduction and its relation to the fee, and it must make specific findings to support its action.
 
 
 29
 To what we said in Prandini we add that findings must be supportable in the fee application record. In re Fine Paper, 751 F.2d at 583-584.
 
 IV.
 Conclusion
 
 30
 On this record the trial court erred in reducing the lodestar hours, in applying a rate other than the hourly rate regularly charged by the attorneys in question, and in applying a 50 per cent negative multiplier. Since on this record the lodestar calculations were undisputed, and the legal arguments advanced by the defendants for disallowance of fees are meritless, judgment should have been entered for the lodestar amount. The judgment appealed from will be reversed and the case remanded for the entry of a judgment consistent with this opinion.
 
 
 31
 STATEMENT BY CIRCUIT JUDGE ADAMS SUR DENIAL OF PETITION FOR REHEARING.
 
 
 32
 In this case the plaintiff purchased property in 1980, in McKeesport, Pennsylvania, for $2700. The City negligently demolished it in March, 1981, but offered to pay the plaintiff $15,000 in damages. Plaintiff declined the offer and instituted a civil rights action. The jury found the value of the property to be $20,000, which the district court reduced to $17,000. There is no issue in this appeal regarding this reduction.
 
 
 33
 Plaintiff then sought attorney's fees of $35,887.50, claiming that her counsel had devoted 358 hours in connection with the case, including 247.75 hours in pretrial discovery. She asserted that the services rendered were worth $100 or $125 per hour, depending on whether James R. Cooney, Esquire, who has been a member of the bar since November, 1980, or W. Thomas Laffy, Esquire, a member of the bar since 1972, performed those services.
 
 
 34
 The trial judge granted a counsel fee of $5,875. In justifying this fee, he disallowed all but 219 hours and valued the services at $50 per hour. The court then applied a negative multiplier because of the nature of the case. The panel has vacated the judgment of the district court regarding the fee and has remanded the matter back to the district court for entry of an order reflecting the much larger requested fee.
 
 
 35
 Given the nature of the grievance here and the cost of the property demolished, this case raises serious questions regarding a fee request that appears to be more than ten times the cost of a small piece of real estate that was destroyed. Especially troubling is the fact that almost 250 hours were claimed to have been spent by plaintiff's counsel in pretrial discovery--that would be the equivalent of six full weeks of legal services devoted to discovery in a case involving a property acquired for $2700, and for which damages have been entered in the amount of $17,000. While we cannot evaluate the reasonableness of the fee request in the absence of a record, its disproportionate relation to the amount in controversy would appear to justify, at the very least, a remand for a reappraisal by the district court along the proper lines of analysis.
 
 
 36
 Both the judiciary and the public increasingly are becoming concerned that a portion of the legal profession seems to be more interested in the subject of fees than in performing quality legal services. This perception, if left unchecked by careful judicial scrutiny, may threaten the viability of the counsel fee statute for legitimate social ends. The question of disproportionate attorney's fees is a matter sufficiently serious, I believe, to command the attention of the entire Court. Moreover, this proceeding might provide an opportune occasion for the Court to refine some important aspects of the Lindy rule. See Lindy Brothers, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102 (3d Cir.1976) (in banc). Since its announcement in 1976 many questions have arisen regarding its applicability which should be resolved promptly in order for the bar and the trial courts to pursue a more realistic interpretation of its salutary goals.
 
 
 37
 For all the foregoing reasons, I respectfully dissent from the order denying the petition for rehearing.
 
 
 38
 Circuit Judges JAMES HUNTER, III, WEIS and GARTH join in this dissent.
 
 
 
 *
 Hon. Marvin Katz, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The defendants' first legal argument, that Cunningham should not recover under 42 U.S.C. Sec. 1988, but should be relegated to her contingent fee arrangement, would have produced a fee for Nernberg and Laffey of $5666.66. Such an arrangement would, of course, have reduced Cunningham's recovery by that amount
 
 
 [2]
 See Merola v. Atlantic Richfield Company, 493 F.2d 292 (3d Cir.1974), 515 F.2d 165 (3d Cir.1975); NBO Industries Treadway Cos., Inc. v. Brunswick Corp., 523 F.2d 262, 279 (3d Cir.1975), vacated on other grounds sub nom. Brunswick Corp. v. Pueblo Bowl-O-Mat, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977); Pitchford v. Pepi, Inc., 531 F.2d 92, 109 (3d Cir.1976); Hughes v. Repko, 578 F.2d 483 (3d Cir.1978); Baughman v. Wilson Freight Forwarding Co., 583 F.2d 1208 (3d Cir.1978); Inmates of Allegheny County Jail v. Pierce, 716 F.2d 177 (3d Cir.1983); Danny Kresky Enterprises Corp. v. Magid, 716 F.2d 215 (3d Cir.1983); Ursic v. Bethlehem Mines, 719 F.2d 670 (3d Cir.1983)
 
 
 [3]
 The city made no contention in the district court that the fee award should be allocated between time spent prosecuting the property damage claim and that spent on the loss-of-loan claim, and thus the trial court did not consider that issue. Since it was not raised in the trial court or addressed here, we do not consider it. The attorneys for Cunningham state that the court erred in reducing the verdict by $15,000, but, as we have noted above, that issue has not been appealed