**In re RHEAM OF INDIANA, INC., Debtor.**

**Civ. A. Nos. 90–2263, 90–2264. Bankruptcy No. 87–06459S.**

United States District Court, E.D. Pennsylvania.

Oct. 11, 1991.

328

Edward J. DiDonato, Ciardi, Fishbone &
DiDonato; Jonathan H. Ganz, Astor, Weiss
& Newman, Philadelphia, Pa.; Robert A.
Kargen and Benjamin Reich, Blue Bell, Pa.,
for debtor.

## OPINION

GAWTHROP, District Judge.

On February 26, 1990, the United States
Bankruptcy Court for the Eastern District
of Pennsylvania entered a Final Judgment
and Order in the matter of *Rheam of
Indiana,* Bankruptcy No. 87–06459S. That
order awarded the law firm of Ciardi, Fish-
bone & DiDonato, ("CF & D"), and the
auctioneer, William F. Comly & Son, Inc.,
("Comly"), reimbursement for services pro-
vided to the estate, but in amounts sub-
stantially less than those requested. CF &
D and Comly have filed separate appeals.
For the reasons that follow, I shall affirm
the bankruptcy court's judgment with re-
spect to CF & D and vacate and remand
the judgment with respect to Comly.

## BACKGROUND

The final judgment and order from which appellants take this appeal is reported at *In re Rheam of Indiana, Inc.*, 111 B.R. 87 (Bankr.E.D.Pa.1990). The following is an overview of facts relevant to that judgment and order.

### A. *CF & D's Application*

This case was filed under Chapter 7 on December 29, 1987. The bankruptcy court appointed Anthony Barone trustee. On February 5, 1988, CF & D filed a *pro forma* application on behalf of Mr. Barone, asking the bankruptcy court to be appointed counsel for the Trustee. On February 10, 1988, the bankruptcy court denied the application, "pending a showing that the Debtor's assets are sufficient to justify appointment." Relevant schedules listed the Debtor's liabilities as $139,750.00 and assets as only $51,750.00. Further, the bankruptcy court learned from Debtor's counsel that the Debtor's inventory, valued "at cost" at $50,000, was probably worth no more than twenty percent of this figure. On March 10, 1988,[1] CF & D filed an appeal, which was assigned to my docket, contending that the bankruptcy court's denial of its application for appointment was error.

On March 4, 1988, before filing the appeal, CF & D filed a second application for appointment with the bankruptcy court. The second application noted specific circumstances of the case and reasons why appointment of counsel would be beneficial to the estate. The bankruptcy court then instructed CF & D to notify all interested parties of its application. CF & D gave such notice, and on April 4, 1988, filed a certificate stating that none of the parties had objected to its appointment. On the same day, the bankruptcy court entered an order appointing CF & D as counsel, subject to two conditions: (1) that CF & D establish, on any application for reimbursement, that its services were "necessary",

and (2) that CF & D's compensation would be limited to $125 per hour.

After the bankruptcy court granted CF & D's second application, CF & D did not withdraw its appeal of the court's denial of its first application. Rather, CF & D filed a second appeal, arguing that the bankruptcy court's limitation of fees to $125.00 an hour was error. The second appeal was assigned to the Honorable Herbert J. Hutton of this district.

On April 3, 1989, Judge Hutton vacated the order limiting attorneys fees to $125.00 an hour, finding that the predetermination of a reasonable hourly rate was inconsistent with the statutory provision authorizing compensation of professionals, 11 U.S.C. § 330, and with general Third Circuit precedent on the fixing of attorneys fees. *See In re Rheam of Indiana, Inc. (Rheam I)*, 98 B.R. 193 (E.D.Pa.1989). Judge Hutton then remanded the fee issue to the bankruptcy court for determination in a manner not inconsistent with the district court's ruling. *Id.*

I then dismissed CF & D's first appeal, finding it moot in light of the bankruptcy court's appointment of CF & D as counsel. *See In re Rheam of Indiana, Inc. (Rheam II)*, C.A. No. 88–2901, Slip Op. (E.D.Pa. May 31, 1989).

On November 21, 1989, upon completion of his statutory duties, the Trustee filed a final report, accounting, and application for fees. CF & D filed its own application for fees on the same day, requesting a total of $12,692.50. CF & D brought its application before the bankruptcy court on January 11, 1990, at the Final Audit Hearing in the case. The bankruptcy court reserved decision on the application at that time. By order dated January 17, 1990, the court gave CF & D and "any interested parties" the opportunity to file briefs addressing (1) CF & D's request for compensation at a rate in excess of $125 per hour, and (2) CF & D's request for compensation for work done on the two appeals related to its appointment as counsel. Only CF & D

---

1. The bankruptcy court reported that the appeal occurred on March 10, 1988. The docket for the appeal states that a certificate of appeal was not filed with the District Court until April 7, 1988.

availed itself of the opportunity. Nevertheless, in its final order, the Bankruptcy Court denied both requests, limiting CF & D's compensation to $6,488.00. In reaching this figure, the court used a maximum hourly rate of $125 and excluded time spent by CF & D prosecuting its appeals.

### B. *Comly*

On March 24, 1988, Plant Realty Co., ("Plant"), the owner of the premises at 19th Street and Indiana Avenue, where the debtor, Rheam of Indiana, conducted its business, filed a motion with the bankruptcy court to compel the Debtor to remove its remaining inventory from the premises. On April 28, 1988, the bankruptcy court denied the motion, but granted Plant leave to file a motion for relief from the bankruptcy court's automatic stay. *See* 11 U.S.C. § 362. On April 29, 1988, Plant did file for such relief. Yet before a hearing could be held on the motion, Plant and the Trustee reached an agreement under which Plant agreed to waive all pre-petition and administrative claims against the estate, in exchange for the Trustee's agreement to "retain the services of Comly Auction Company to remove all of Debtor's property from the present location." This agreement was made by stipulation, approved by the bankruptcy court on May 13, 1988, and entered of record on May 17, 1988.

Earlier, on April 20, 1988, the Trustee had filed an application seeking the appointment of Comly as auctioneer for the estate. Comly began work removing Debtor's inventory from the premises at 19th and Indiana on May 4, 1988. *See* Supplement to Auctioneer's Application for Compensation, ¶ 4 (Document No. 23 of Appellate Record, C.A. No. 90–2264). Comly hired fourteen laborers and two supervisors, who worked until May 24 on the task. *Id.*, ¶¶ 3–4. Comly then conducted auctions on May 24, May 31 and June 14, 1988, grossing $68,484.18 from the sales. On July 14, 1988, the Trustee, through CF & D, filed a Certificate of No Objection to the

application of the Trustee to employee Comly. On July 19, 1988, the bankruptcy court approved the application, which stated that Comly would receive a commission [2] "plus expenses". Comly filed an application for compensation in the following amounts: $4,924.21 for commission, $4,924.21 for advertising costs, and $23,-692.82 for labor costs. The labor costs included, *inter alia*, costs of removing the Debtor's inventory from 19th and Indiana, cleaning the premises there, trucking the inventory to Comly's warehouse, and unloading the inventory at the warehouse.

The bankruptcy court awarded Comly a full commission of $4,924.21, but limited compensation for expenses to $10,000. The court stated that it had the authority to deny compensation for expenses completely, (1) because Comly was not appointed until after the expenses were incurred, (2) because the "expenses" authorized in the court's order were not intended to include moving and warehousing the Debtor's inventory, and (3) because the advertising expenses were not documented by receipts. The bankruptcy court nevertheless granted $10,000 compensation, because Comly's services benefited the estate, and because the court was reluctant to "penalize Comly too severely" for the delay in its appointment, which the court attributed to the "shortcomings" of Trustee's counsel, CF & D. *See Rheam*, 111 B.R. at 95.

### DISCUSSION

■ This court has jurisdiction over CF & D's appeal, under 28 U.S.C. § 158(a). In exercising appellate review, this court must accept the factual findings of the bankruptcy court unless those findings are clearly erroneous. *In re Jersey City Medical Center*, 817 F.2d 1055, 1059 (3rd Cir.1987). Review of legal conclusions is plenary. *Id.*

### I. Attorneys' Fees

#### A. *Sua Sponte Reduction*

■ CF & D argues that the bankruptcy court erred as a matter of law by *sua*

---

**2.** The commission was approved at the following rates

 10% of the first $10,000.00
 7.5% of the next $40,000.00;
 5% of the next $50,000.00;
 3% of the next $100,000.00; and
 1% on all amounts above $200,000.00 realized from the sale.

*sponte* reducing its claim for compensation. CF & D relies on *Cunningham v. City of McKeesport,* 753 F.2d 262, 267 (3rd Cir. 1985) (*Cunningham I*), *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 719 (3rd Cir.1989), and a recent decision in this district, *In re Jensen's Interiors, Inc.,* 132 B.R. 105 (E.D.Pa.1991) (per Newcomer, J.). In *Cunningham I,* the Third Circuit ruled that in "statutory fee cases", the trial court could not reduce the number of hours, nor the billing rate, in an attorney's fee petition, when "an opposing party has been afforded the opportunity" to challenge the attorney's affidavit, and has failed to raise an issue of material fact as to hours spent or the necessity for their expenditure. *See Cunningham I,* 753 F.2d at 267–268. In *Bell,* the Third Circuit reaffirmed this principle, noting (1) that *sua sponte* reductions of requested fees deprive applicants the opportunity to offer evidence in support of their requests, and (2) that, because fee litigation is "adversarial litigation," independent review of fee applications by the court is not necessary. *See Bell,* 884 F.2d at 719. In *Jensen's Interiors* Judge Newcomer, applying *Cunningham* and *Bell* to the bankruptcy context and following two earlier district court decisions, ruled that absent the Trustee's objection, the court could not *sua sponte* reduce requested compensation. *See In re Marlon B. Pendleton,* Civ.A. No. 90–1091, 1990 WL 29645, 1990 U.S.Dist. LEXIS 2955 (E.D.Pa. March 15, 1990) (per Wiener, J.); *Fleet v. United States Consumer Council,* Civ. A. No. 89–7527, 1990 WL 18926, 1990 U.S.Dist. LEXIS 2273 (E.D.Pa. Feb. 23, 1990) (per Fullam, C.J.).

In the present case, no interested parties to the bankruptcy proceeding filed an objection to CF & D's application for compensation.[3] CF & D contends, therefore, that the bankruptcy court had no authority to reduce its requested fee.

I disagree. *Cunningham I* and *Bell* both involved the calculation of fees under fee-shifting statutes. *See Cunningham I,* 753 F.2d at 265 (fees sought under 42 U.S.C. § 1988); *Bell,* 884 F.2d at 719 (fees sought under 29 U.S.C. § 1132(g)(1) of Employee Retirement Income Security Act ("ERISA")).[4] Such statutes allow prevailing parties in adversary actions to recover attorneys fees from the losing party. In that procedural context, the unsuccessful litigant can be expected to scrutinize any fee application closely, to minimize his or her financial exposure. If the unsuccessful litigant fails to raise a material issue of fact as to the reasonableness of an hourly wage, or the necessity of time spent on a particular task, the court may infer that the compensation requested is proper.

The same is not true in bankruptcy cases. In bankruptcy proceedings, attorneys and other professionals employed by the trustee are compensated from the debtor's estate, not by an opposing party. *See* 11 U.S.C. § 330. Creditors may have an interest in an application for fees, to the extent that the payment of fees may reduce their separate shares of the final distribution. Yet, depending on the number of creditors, the size of each creditor's claim, the amount of the estate's assets, the degree to which the creditors' claims are covered by those assets, and the amount requested in the fee application, there may not be a party, in any given bankruptcy proceeding, with enough of a financial stake in a fee dispute to oppose the application, however exaggerated its numbers may be.

**3.** CF & D lists for inclusion in the appellate record, as document number 12, a "Certification of No Objection to Application of Ciardi, Fishbone & DiDonato for Compensation". Such a document was apparently never part of the bankruptcy court record and was not transmitted to this court. However, in the order of January 17, 1990, the bankruptcy court expressly invited any interested party to file a brief in opposition to CF & D's application. As the bankruptcy court referred to no such opposition, I infer none was made. Thus, for the purpose of this appeal, I assume that all interested parties were given an opportunity to object to CF & D's application, which invitation none accepted.

**4.** In *Bell,* the plaintiffs technically sought attorneys' fees under the terms of a settlement agreement, *see* 884 F.2d at 716, rather than under ERISA's fee-shifting provision. However, the court treated the case as though it arose under the statute. *See* 884 F.2d at 719, n. 5.

CF & D contends that the role of opposing party is filled by the United States trustee. Under § 330, professionals seeking compensation from a bankruptcy court must notify the appropriate United States trustee. U.S. trustees are directed by statute to supervise bankruptcy cases, which supervision may include the monitoring of applications for compensation. *See* 28 U.S.C. § 586(a)(3); *See also, In re Jensen's Interiors, Inc., supra,* 132 B.R. at 105. However, U.S. trustees are directed to monitor applications, and to file comments with the bankruptcy court, only when the trustees "consider it to be appropriate." 28 U.S.C. § 586(a)(3). A decision by the U.S. trustee to monitor, or file comments in, any particular case, may depend upon administrative concerns unrelated to the merits of a fee application. Further, an opposing party in litigation is in much better position to appreciate the reasonableness and necessity of actions undertaken by the counsel seeking compensation.

It is well that the trustee can be helpful to the court in moderating such applications and, when it deems appropriate, filing comments with the court. But, however useful the trustee's presence, the Third Circuit has never held that a trustee, with its discretion to comment, is so omnipotent an ombudsman as to divest the bankruptcy court of its duty to inquire into a fee's reasonableness, and to take action to abate, should that court deem the fee unreasonable or the work performed for the fee unnecessary. Indeed, were the circuit to hold otherwise, the effect would be to emasculate the bankruptcy court so as to render it virtually eunuchoid.

Judge Newcomer in his treatment of the issue in *Jensen's Interiors, supra,* places great weight on the trustee's supervision. I, too, am mindful of their statutory duty to be a continuing, overseeing presence. Indeed, I am mindful of a lot of duties that a lot of statutes impress upon a lot of

people. Experience has suggested, however, that just because a statute proclaims that a thing should be done, does not necessarily mean that it will be. It is, in fact, conceivable that the worthy spirit and letter of the statute notwithstanding, a trustee might just have left undone that which ought to have been done. I cannot say that such an omission would act as an implied repealer of the express language of the statute: "The court may award ... to the debtor's attorney ... *reasonable* compensation for *actual, necessary* services rendered ..." (emphasis supplied) Rather, to construe the statute as counsel proposes, the statute could well read: "The court shall award to the debtor's attorneys whatever compensation they ask for, whether reasonable or unreasonable, just so long as nobody objects." That, of course, is not the law, and I am not the one to rewrite it. As the Third Circuit has instructed, "It is our duty, under established principles of statutory construction, to give effect, if possible, to every clause and word of a statute." *Bell v. United States,* 754 F.2d 490, 499 (3rd Cir.1985).

In short, courts in bankruptcy proceedings, which are not traditional adversary proceedings, cannot rely on the adversary process to provide appropriate scrutiny to fee applications. Therefore, I find that a court's exercise of independent review over fee applications, and the *sua sponte* reduction of a request for fees, is not *per se* error in a bankruptcy case.[5]

I note that in so holding I depart from two other earlier decisions in this district, both of which summarily reversed bankruptcy judges for *sua sponte* reducing requests for attorneys fees. *See In re Marlon B. Pendleton,* C.A. No. 90–1091, Slip Op. (E.D.Pa. March 15, 1990) (per Wiener, J.) (available at 1990 WL 29645, 1990 U.S.Dist. LEXIS 2955); *Fleet v. United States Consumer Council,* C.A. No. 89–7527, Slip. Op. (E.D.Pa. Feb. 23, 1990) (per

---

**5.** On the other hand, the Third Circuit raises due process concerning abuse of discretion by the courts in both *Bell* and *Cunningham.* In those cases, the court held that the adversary process and the record it produces serves as a safeguard against arbitrary judicial action. In bankruptcy cases, the mandatory notice and hearing requirements of § 303 assure that the court will not act without giving the fee petitioner a fair opportunity to be heard, thus allaying these due process concerns.

Fullam, C.J.) (available at 1990 WL 18926, 1990 U.S.Dist. LEXIS 2273). Both cases cited the Third Circuit's statement in *Bell* that "a Judge may not *sua sponte* reduce a request for attorneys fees." *Id.* (citing 884 F.2d at 719). With genuine respect for my distinguished brethren, I nevertheless find that these two cases took *Bell* from one context and proclaimed it as binding in another—a context in which the Third Circuit has never said it binds.[6] The contexts are genuinely distinguishable.

The Third Circuit did not rule in *Bell* that a Judge may never *sua sponte* reduce a request for attorneys' fees. Rather, the court ruled that "a district court in a statutory fee case may not reduce the number of hours claimed by an attorney if *the adverse party* has declined to 'raise a material fact issue'" regarding the claim. *See* 884 F.2d at 719 (citing *Cunningham I*, 753 F.2d at 267) (emphasis added). While the court used the general term "statutory fee case", there is no suggestion from the opinion that the court contemplated, or intended to include, non-adversarial bankruptcy proceedings. Indeed, since the court goes on to refer to "the adverse party", I can only assume that the court

used "statutory fee case" as shorthand for cases arising under statutes with fee-shifting provisions, and not to refer to bankruptcy cases, where parties are not "adverse" in the traditional sense. And it must be remembered that *Bell* itself, was not a bankruptcy, but an ERISA case.

Further, at least two courts in this district have held that the *sua sponte* reduction of an attorney's fee request in a bankruptcy case is proper. *See In re National Paragon Corp.*, 87 B.R. 11, 13 (E.D.Pa. 1988) (per Ditter, J.); *In re J.A. & L.C. Brown Co., Inc.*, 75 B.R. 539 (E.D.Pa.1987) (per VanArtsdalen, J.). While neither *In re National Paragon* nor *In re Brown Co.* addressed the rule announced in *Cunningham I*, both were decided after *Cunningham I* and thus implicitly hold that *Cunningham I* did not affect fee applications in the bankruptcy arena. I concur expressly and move to the question of whether the bankruptcy court properly exercised its discretion in reducing the award in this case.

### B. *Hourly Rate*

CF & D sought compensation at various hourly rates, as follows:

| | Rate | Hours | Total |
|---|---|---|---|
| Edward J. DiDonato | $175.00 | 24.00 | $4,200.00 |
| | 185.00 | 12.70 | 2,349.50 |
| Aris J. Karalis | 115.00 | .80 | 92.00 |
| | 125.00 | 30.00 | 3,750.00 |
| Patrick J. Casey | 130.00 | .20 | 26.00 |
| Christina Q. Lentz | 70.00 | 32.50 | 2,275.00 |
| | | Total | $12,692.50 |

In granting compensation, the bankruptcy court refused to grant more than $125.00 per hour for any attorney. CF & D contends that this award constitutes legal error, because it wrongly restricts the

hourly wage based on the "spirit of economy".

■ Attorneys fees in bankruptcy cases are no longer to be determined under a rule

---

**6.** The full quote from the *Bell* opinion is:

Bell contends that the principle announced in *Cunningham I* that a judge may not *sua sponte* reduce a request for attorneys' fees should extend beyond civil rights cases and apply equally to ERISA cases. We agree. The reasoning articulated in *Cunningham I*

with respect to this principle is not unique to the area of civil rights, and we can see no reason to create a different jurisprudence of fee awards in ERISA cases. [citations omitted]

*See* 884 F.2d at 719.

of economy. Section 330 of the bankruptcy code, added with the Bankruptcy Reform Act of 1978, *see* P.L. No. 598, 92 Stat. 2564 (Nov. 6, 1978), provides that attorneys, and other professionals, are to be compensated for services provided to an estate, "based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title". *See* 11 U.S.C. § 330(a)(1). By delineating these factors, Congress intended to overrule earlier cases that restricted fees to attorneys based on a concern for conserving the estate's assets, or on other factors unrelated to the services performed and the general market value of those services. *See In 're Nucorp Energy, Inc.,* 764 F.2d 655, 658 (9th Cir.1985) (citing H.R.Rep. No. 595, 95th Cong. 1st Sess. 329–330 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6285–6287). Congress desired that fees for bankruptcy attorneys be competitive with fees available in non-bankruptcy work, so that competent attorneys would remain in the bankruptcy field. *Id.*

■ However, the bankruptcy court in this case expressly disclaimed any reliance on a rule of economy. *See* 111 B.R. at 96. Indeed, the court stated that its decision to limit fees to $125.00 an hour was based on a careful consideration of the "difficulty of the tasks, the prevailing market rate, counsel's normal billing rate, and the rates awarded by other courts in similar circumstances." *Id.* These are the factors that Judge Hutton in *Rheam I* directed the bankruptcy court to consider. *See* 98 B.R. at 194.

CF & D apparently assumes the bankruptcy court relied on a rule of economy, despite the court's statement to the contrary, because the court's choice of an hourly rate of $125 was not based on a

"clear finding or consideration [of] the prevailing market rate or counsel's normal billing rate." *See* Appellant's Brief at 20. I cannot agree.

Although the bankruptcy court did not request, nor did CF & D voluntarily provide, affidavits from area law firms regarding hourly billing rates, the court did consider the prevailing market rates in reported case decisions. In so doing, the bankruptcy court noted that an hourly rate of $125 was comparable to hourly rates granted to attorneys in bankruptcy opinions from across the country and non-bankruptcy opinions from the region. *See* 111 B.R. at 96.

Reliance on rates granted in reported decisions is not optimal, given the vagaries of the reporting system and the fact that the legal market is not static.[7] However, the bankruptcy court did not rely on these cases alone. Rather, the court also relied on the billing rates of CF & D's attorneys. The schedule provided to the court by CF & D stated that time spent on the case by Aris J. Karalis, Esquire, a junior associate, was billed out at $125.00 per hour. The bankruptcy court found that the legal questions presented in this case, aside from those related to CF & D's representation,[8] were "extremely simple" and could have been entirely handled by Mr. Karalis. *See* 111 B.R. at 97. The court determined, therefore, that CF & D could not bill at the higher rate of Edward J. DiDonato, Esquire—a rate which presumably reflected Mr. DiDonato's greater skill and experience—for tasks that did not require his skill and experience. The court then awarded fees at the specific rate CF & D established for its junior associate.[9]

This ruling is consistent with Third Circuit case law. In *Ursic v. Bethlehem Mines,* 719 F.2d 670 (1983), the Third Cir-

---

7. The bankruptcy court's application of the Consumer Price Index ("CPI") to the hourly rate reported in a single case, *see* 111 B.R. at 98, strikes me as especially unscientific, even if one could assume that legal rates changed at the same pace as the CPI.

8. CF & D states that Mr. DiDonato's services were used primarily on CF & D's two appeals. I

make *no determination as to whether it would be proper to cap his fees at $125 for the appellate work, as I find that compensation for the appeals was properly denied.*

9. The bankruptcy court apparently did so reluctantly, noting that this rate was "liberal" for a 1988 law school graduate.

cuit expressly disapproved of the "wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates." *See* 719 F.2d at 677. The court then established the rule that when senior partners perform "routine" tasks, they should not bill their time at their usual rates. *Id.* "A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Id.* Thus, as to rates for the latter endeavor, it appears, perhaps paradoxically, that there should be a ceiling.

In this case, the bankruptcy judge found that the legal tasks to be performed, with respect to administration of the estate, were the litigious equivalent of painting a farmer's barn. CF & D does not challenge this finding. I am, therefore, unable to find that the bankruptcy court abused its discretion by granting fees at a barn-painter's price.

### C. *Time Spent on Appeals*

■ Section 330(a)(1) authorizes compensation only for "actual, necessary services rendered" by an attorney. The issue here, therefore, is whether the bankruptcy court abused its discretion in determining that neither of the appeals taken by CF & D regarding its representation was "necessary". A task is "necessary" if it reasonably "facilitates the successful representation" of a debtor or an estate. *See In re National Paragon*, 87 B.R. at 13.

### 1. *Denial of Counsel*

■ CF & D argues that its first appeal was necessary because the Trustee needed the representation of counsel to fulfill his duties. The bankruptcy court denied compensation, *inter alia*, because the appeal was rendered moot by its own order granting CF & D the right to represent the trustee in this case. *See* 111 B.R. at 99. Without addressing the merits of the appeal, I find that the bankruptcy court did not abuse its discretion in so holding.

■ CF & D prosecuted its appeal, in large part, after April 4, 1988, the date the bankruptcy court appointed it as counsel to the trustee in this case. CF & D filed a certificate of appeal with the district court on April 7, 1988. CF & D filed its appellate brief on that appeal on May 2, 1988. Clearly, none of these services were necessary to the administration of the estate of Rheam of Indiana, because CF & D already represented Rheam of Indiana pursuant to the bankruptcy court's order. CF & D argues that the appeal presented a "very real issue" that adversely impacted on "all other cases in which a Trustee would seek counsel." *See* Appellant's Brief at 23. Yet the collateral impact of an appeal is irrelevant, if there can be no beneficial impact on the estate asked to fund it.

The efforts spent by CF & D on the appeal, before the bankruptcy court granted its amended application for appointment, were not so clearly unnecessary. Nevertheless, the reasonableness of these efforts is also questionable, given that CF & D filed an amended application—in essence a motion for reconsideration—on March 4, 1988, before it filed the appeal. After CF & D filed the amended application, the bankruptcy court instructed CF & D to notify interested parties under Local Bankruptcy Rule 9013.3(d). That rule provides that an application for appointment may be granted seven days after it is filed, if (1) the applicant gives notice to all interested parties at the time of filing, (2) no interested parties object to the application in five days, and (3) the applicant files a certificate of no objection with the court. CF & D served notice to all parties, but waited until April 4, 1988 to file a certificate of no objection. On the same day the application for appointment was granted.

Had CF & D filed the certificate of no objection before filing an appeal, no appeal would have been necessary. Further, had CF & D filed the certificate of no objection as quickly as Rule 9013.3(d) allowed, its own appointment would have accomplished sooner. This is the wisdom of hindsight. Yet CF & D did not need hindsight to recognize that its second application for appointment could render its appeal moot, and, therefore, to recognize that it would be more efficient to expedite consideration

of the application, and appeal only if the second application was denied. The bankruptcy court's denial of CF & D's request to be compensated is in essence a determination that appeal was not necessary while the second application was under consideration. I am unable to find that this was an abuse of discretion.

### 2. *Advance Limitation on Fees*

CF & D argues that its second appeal was necessary because it succeeded. The bankruptcy court acknowledged that the appeal was granted in CF & D's favor, but nevertheless denied compensation, reasoning: (1) that the appeal was improperly taken from an interlocutory order without leave of the court, and (2) that the appeal only benefited CF & D. *See* 111 B.R. at 101.

Obviously, the bankruptcy court erred if it denied CF & D compensation for its appeals, solely on the ground that the district court in *Rheam I* did not have jurisdiction to hear the appeal. The existence of appellate jurisdiction is properly considered only by the reviewing court, or by a court with appellate jurisdiction over the reviewing court. Nevertheless, it was not error for the bankruptcy court to consider that the appeal was interlocutory in nature, to the extent that the timing of the appeal bore on its "necessity" to the administration of the estate.

According to the bankruptcy court, the order restricting CF & D's hourly rate at the outset of representation was a "prognosis." *See* 111 B.R. at 96. The district court in *Rheam I* found the order not a guiding estimate, but unacceptably restrictive fee cap, and it vacated, ruling that the bankruptcy court could not determine a reasonable rate for CF & D's compensation before their services were performed. *See Rheam I,* 98 B.R. at 194. Nevertheless, that CF & D prevailed on the merits of its appeal does not necessarily mean that the appeal was necessary to further CF & D's duties to the estate, or that it was necessary when taken. Indeed, given this court's ruling above—that it was not error for the bankruptcy court to compensate CF & D for all services at the rate

of $125.00 per hour—it is evident, in retrospect, that the appeal was not necessary. CF & D asserts that Mr. DiDonato's services, and accordingly his higher fees, were specifically necessary to prosecute the appeals, which CF & D's partners determined would "impact all future bankruptcy proceedings". *See* Appellant's Brief at 33. Mr. Karalis apparently handled the bulk of the routine, non-appellate matters in this case. *Id.* at 31–33. It follows, *a fortiori,* that had CF & D waited until the end of the case to raise the $125.00 cap on its fees, the appeal would not have been necessary, because that cap was at or above the rate charged for Mr. Karalis's work.

This is not to say that the bankruptcy court's advance cap on fees was proper. It is to say that the cap was not relevant to this case. CF & D does not assert that, at the time it filed the appeal, it anticipated complex issues that would require Mr. DiDonato's expertise, or that it was unable financially to accept the representation at the limit set by the court. Rather, the record suggests that CF & D had no reason to believe that the bankruptcy court's "prognosis"—that the case was as routine as they come—was incorrect.

Of course, had CF & D waited to appeal until the case became less routine, it would have denied itself the opportunity to challenge a ruling it believed to be, and which the district court in *Rheam I* ultimately found to be, legally incorrect. Yet, as noted above, § 330 only authorizes compensation when it is necessary for the administration of a particular estate. If bankruptcy counsel choose to litigate issues that have no immediate impact on a particular case, but which serve their interest in other cases, they must weigh the benefits and bear the costs on their own. In the case at bar, the bankruptcy court did not abuse its discretion in finding that CF & D's second appeal, although successful, did not benefit the estate of Rheam of Indiana. CF & D, therefore, must bear its own costs therefor.

## II. Auctioneer's Fees

### A. *Nunc Pro Tunc Appointment*

The bankruptcy code permits a trustee to employ "attorneys, accountants,

appraisers, *auctioneers*," and other professionals, to assist the trustee in carrying out his or her duties. However, the trustee may do so, only "with the court's approval". *See* 11 U.S.C. § 327(a) (emphasis added). The Third Circuit has held that this provision contemplates "prior approval". *See Matter of Arkansas Co. Inc.* 798 F.2d 645, 649 (3rd Cir.1986). Accordingly, a bankruptcy court may not approve the employment of a professional, for services already performed by the professional, unless the court finds (1) that it would have approved the employment had the professional applied in advance, and (2) that there are "extraordinary circumstances" excusing the professional's failure to get advance approval. *F/S AirLease II, Inc. v. Simon,* 844 F.2d 99, 105 (3rd Cir.1988); *Matter of Arkansas Co.,* 798 F.2d at 650.

■ In the case at bar, Comly completed its services as auctioneer for the estate of Rheam of Indiana well before July 19, 1988, the date the bankruptcy court granted the Trustee's application to employ Comly. The bankruptcy court thus determined that it was entitled to deny Comly any compensation.[10] Comly counters that the "extraordinary circumstances" standard for *nunc pro tunc* employment does not apply here, because Comly's application for appointment was pending while it was performing its services for the estate.

■ Comly's assertion is not supportable. Advance approval of employment is required, to allow the bankruptcy court to ensure the integrity, experience, and competence of the professional seeking employment. *See Matter of Arkansas,* 798 F.2d at 648 (citing *In re Hydrocarbon Chemicals, Inc.,* 411 F.2d 203, 205 (3rd Cir.1969). The key factor is whether the court has exercised its review, not whether the applicant has sought review. The Third Circuit has made it clear that professionals must obtain approval, and not merely seek approval, before performing services for an

estate, absent extraordinary circumstances. *See F/S AirLease,* 844 F.2d at 107.

■ Thus, if there were no extraordinary circumstances in this case, Comly's request for compensation would be properly denied. Unfortunately, in the case at bar, the bankruptcy court's findings with respect to the existence of extraordinary circumstances are not evident.

■ Whether extraordinary circumstances exist is a matter within the sound discretion of the bankruptcy court. *Matter of Arkansas,* 798 F.2d at 650. However, in exercising its discretion, the court is required to consider:

> whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

*F/S AirLease,* 844 F.2d at 105–106; *Matter of Arkansas,* 798 F.2d at 650. Here, the bankruptcy court made no particular findings of fact, on the record, regarding possible justifications for Comly's failing to obtain advance approval. Thus, the record is not clear as to whether the factors outlined in *F/S AirLease* and *Matter of Arkansas* were thoroughly considered.

■ Further, the record suggests that, had the bankruptcy court considered these factors, it may have found that extraordinary circumstances did exist. Comly asserts that it followed the instructions of the Trustee and Trustee's counsel and the representations made by the bankruptcy court. Indeed, while Comly's application was pending, the bankruptcy court approved a stipulation between the Trustee and Plant Realty, which expressly provided that Comly would be hired to remove inventory from

---

**10.** The bankruptcy court's determination came after Comly's request for compensation, and not at the time of Comly's request for employment, which the court granted. However, since an application for employment *nunc pro tunc* is

essentially a prelude to a request for compensation for that employment, it makes no difference whether the issue of pre-approval services is raised upon the application for approval or upon the application for compensation.

the debtor's former place of business.[11] The Third Circuit has stated that a professional's justified reliance on the expertise of a Trustee or of the Trustee's counsel may excuse the professional's failure to obtain approval before beginning work. *See F/S AirLease,* 844 F.2d at 107 (citing *In re Freehold Music Center, Inc.,* 49 B.R. 293 (Bankr.D.N.J.1985).[12] A professional's reliance on actions of the bankruptcy court are also clearly relevant to whether he or she was justified in beginning work before formal approval. Comly, or Trustee's counsel, may have reasonably understood the court's approval of the stipulation to be interim approval of Comly's hire, at least for the specific purpose of moving the property.

▮ In considering Comly's application for compensation, the bankruptcy court did apparently consider Comly's reliance on the Trustee's counsel. The court granted Comly its commission and $10,000 for expenses, because, among other things, it did not want to "penalize Comly too severely for shortcomings attributable solely to the Trustee's counsel". *See* 111 B.R. at 95. However, in reaching this ruling, the court considered factors—such as the hardship on Comly and the value of services Comly provided to the estate—that a bankruptcy court may not properly consider in an application for *nunc pro tunc* employment. The Third Circuit has ruled that courts are not to consider a professional's claims of hardship, *see Matter of Arkansas,* 798 F.2d at 649, nor the benefits provided by the professional, *see F/S AirLease,* 844 F.2d at 108, when determining whether to compensate services performed by the professional prior to court appointment.

▮ More importantly, nothing in *Matter of Arkansas* or *F/S AirLease* gave the bankruptcy court authority to perform a Solomonic slicing of Comly's fee request. If, in the exercise of its discretion, the court determined that extraordinary circumstances did not exist, it was error for the court to grant any compensation for services performed before appointment. *See F/S AirLease,* 844 F.2d at 109. If, on the other hand, the bankruptcy court determined that Comly's failure to obtain advance appointment was excusable, Comly was entitled to "reasonable compensation" for all "actual, necessary services" performed. *See* 11 U.S.C. § 330(a).

Since there are no findings of facts on the record as to the existence of "extraordinary circumstances", the case must be remanded to the bankruptcy court. If, on remand, the bankruptcy court determines that Comly is entitled to compensation for services performed prior to appointment, the court will be required to address whether the compensation requested is reasonable. To aid the court in this task, I turn to Comly's remaining points on appeal.

B. *Terms of Order Approving Employment*

The bankruptcy court reasoned that it could reduce the amount claimed by Comly's as expenses because its order granting Comly's application for appointment did not authorize Comly to move the Debtor's inventory. That order, dated July 17, 1988, stated that Comly would earn a commission on the property auctioned, and would be awarded "expenses". In its final judgment, the bankruptcy court stated that the order "obviously contemplated" that Comly was only to be awarded "expenses normally associated with an auctioneer's engagement in an auction sale." *See* 111 B.R. at 95. The court found that this included advertising expenses, but did not include the costs of "extensive moving and warehousing," especially when those costs amounted to "almost five times [Comly's] commission". *Id.*

---

11. The record reveals that Comly began work removing property from the premises on May 4, 1988, while the stipulation was not entered of record until May 17, 1988. Comly's reliance on that document, if any, is thus limited to work performed after May 17.

12. In *F/S AirLease,* the court held that a professional, who was a "sophisticated businessman", and who was represented by separate counsel and was familiar with the bankruptcy code, was not justified in relying on the trustee to ensure that his appointment was properly made. *See* 844 F.2d at 107.

In reviewing this finding, I attach no particular significance to the language of the bankruptcy court's July 17 order. By stating that Comly would be awarded "expenses", the court did not modify the standard provision of the bankruptcy code, which authorizes reimbursement to professionals for "actual, necessary expenses". *See* 11 U.S.C. § 330(a)(2). The issue, therefore, is whether the moving expenses incurred by Comly were "actual" and "necessary".

Comly asserts that the moving of the debtor's inventory was necessary in this case because Plant Realty refused to allow an auction sale on its premises. Comly further notes that the bankruptcy court apparently concurred in this assessment, by approving a stipulation between the Trustee and Plant Realty, which expressly authorized Comly to move the inventory.

 The bankruptcy court made no findings as to the necessity of the moving in this case. Rather, the court held that the moving expenses were not fully compensable because they are not the type of expenses normally incurred by an auctioneer. This was error. Nothing in § 330(a)(2) suggests that an auctioneer cannot be compensated for the expenses of moving property before an auction, if the move is necessary under the circumstances of the case, and the expenses claimed are reasonable. It is upon the necessity of the move and the reasonableness of the fees that the bankruptcy court must focus.

C. *Labor Expenses not Compensable*

 The bankruptcy court also reasoned that Comly was not entitled to all expenses claimed, because auctioneers may not recover labor costs as an expense. In so holding, the court relied on its earlier decision in *In re Schwemmer Hardware Co.*, 103 B.R. 635, 641–642 (Bankr.E.D.Pa. 1989). In that case, the bankruptcy court denied separate compensation to an auctioneer for labor costs, because such costs, as overhead costs, were included in the calculation of the auctioneer's commission. *Id.* The court properly recognized that the recovery of labor costs as an "expense", when the auctioneer's commission was set to cover those costs, would be double-dipping from the estate's funds.

 However, *Schwemmer Hardware* is not necessarily applicable here. The bankruptcy court acknowledged that moving expenses are not expenses normally incurred by an auctioneer. There was thus no reason for the court to believe that these expenses were contemplated in or reasonably covered by Comly's requested commission. To determine that the moving costs were not compensable, without making any findings as to how the costs were determined or as to the reasonableness of the costs, was error. The bankruptcy court may properly deny an auctioneer's necessary labor costs as an expense, only if the court finds, on the record of the particular case before it, that the auctioneer was reasonably compensated for those costs through the payment of its commission.

An order follows.

### ORDER

AND NOW, this 11th day of October, 1991, it is hereby ORDERED that:

1. The Bankruptcy Court's Final Judgment and Order, entered on February 26, 1990, granting compensation to the law firm of Ciardi, Fishbone and DiDonato in the amount of $6,488.00 for services performed and $33.42 for expenses, is AFFIRMED.

2. The Bankruptcy Court's Final Judgment and Order, entered on February 26, 1990, granting compensation to the auctioneer, William F. Comly & Sons, Inc., in the amount of $4,924.21 for compensation and $10,000 for expenses is VACATED, with orders that the case be remanded to the bankruptcy court for findings of fact and decision, in accord with the attached opinion.